**Robert E. Maloney, Jr**., OSB No. 670856
maloneyr@lanepowell.com
**Pilar C. French**, OSB No. 962880
frenchp@lanepowell.com
**Anthony M. Stark**, OSB No. 122633
starka@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Defendant Wells Fargo Bank N.A.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CARLOPI THOMASIAN,<br><br>                Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK N.A. a foreign legal entity, TRANS UNION LLC, a foreign company, EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation, EQUIFAX INFORMATION SERVICES, LLC, a foreign corporation,<br><br>                Defendants. | Case No. 3:12-cv-01435-HU<br><br>Defendant Wells Fargo Bank N.A.'s MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT |

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  FACTS ............................................................................................................. 4

    A.  Origination of the Account. ..................................................................... 4

    B.  Plaintiff's Knowledge of the Credit Card Account. ................................. 6

    C.  Plaintiff's Use and Benefit from the Credit Card Account. ..................... 8

    D.  Plaintiff's Disputes. ................................................................................. 9

        1.  Direct Dispute Letters to Wells Fargo—No FCRA Liability. ..................... 9

        2.  Credit Bureau Disputes. ..................................................................... 11

        3.  Plaintiff Did Not Claim Fraud, Nor Did She Provide Evidence That Information Was Inaccurate. ............................................................. 14

    E.  The Complaint. ....................................................................................... 15

    F.  Plaintiff's Destruction of Evidence........................................................ 15

III. ARGUMENT ................................................................................................. 16

    A.  Legal Standard ....................................................................................... 16

    B.  Plaintiff's Claims Are Barred by Her Delay. ........................................ 17

        1.  Plaintiff's claims are barred by FCRA's statute of limitations. ................ 17

        2.  Plaintiff's claims are barred by laches. .................................................. 20

    C.  Plaintiff's Claims Are Barred by Equitable Estoppel. .......................... 24

    D.  As a Matter of Law, Plaintiff Is Not Entitled to Recover under FCRA................ 25

        1.  Plaintiff cannot meet her burden of proof that inaccurate information was reported by Wells Fargo. ................................................. 25

        2.  Plaintiff cannot show that Wells Fargo ever failed to perform a reasonable investigation................................................................... 27

    E.  Plaintiff's Claims Should Be Dismissed on the Grounds of Spoliation. .............. 31

        1.  Plaintiff knowingly or recklessly destroyed, or allowed her husband to destroy, key evidence. ........................................................... 31

        2.  Plaintiff's willful spoliation of evidence has prejudiced Wells Fargo's ability to defend this litigation. ................................................ 32

        3.  No Lesser Remedy Would Cure the Prejudice Caused by Plaintiff's Spoliation. ....................................................................... 33

    F.  Plaintiff's "Willful Violation" Claim under 15 U.S.C. § 1681n Should Be Dismissed................................................................................. 33

IV.  CONCLUSION............................................................................................... 35

PAGE i – TABLE OF CONTENTS AND TABLE OF AUTHORITIES

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*A & T Siding, Inc. v. Capitol Specialty Ins. Corp.*,
No. 3:10-CV-980-AC, 2012 WL 707100 (D. Or. Mar. 12, 2012) ...........................................31

*Allicon v. Verizon Wireless*,
2011 WL 2357600 (D.N.H. Jun. 9, 2011) ...............................................................................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................................17

*Andresakis v. Capital One Bank (USA) N.A.*,
No. 09 CV 8411(DAB), 2011 WL 1097413 .............................................................................19

*Brancaccio v. Mitsubishi Motors Co.*,
No. 90–7852, 1992 WL 189937 (S.D.N.Y. Aug. 31, 1992) ......................................................32

*Brian M. v. Recontrust Co., N.A.*,
No. CIV S-11-1477 GEB DAD PS, 2012 WL 467405 (E.D. Cal. Feb. 13, 2012) ...................19

*BTO Logging, Inc. v. Deere & Co.*,
174 F.R.D. 690 (D. Or. 1997) .................................................................................................32

*Campbell v. Experian Info. Solutions, Inc.*,
08-4217-CV-C-NKL, 2009 WL 3834125 (W.D. Mo. Nov. 13, 2009) ....................................35

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................................16

*Cereghino v. Boeing Co.*,
826 F. Supp. 1243 (D. Or. 1993) ...........................................................................................20

*Chiang v. Verizon New England Inc.*,
595 F.3d 26 (1st Cir. 2010) ...............................................................................................25, 26

*City of Chetopa v. Board of County Com'rs.*,
156 Kan. 290, 133 P.2d 174 (1943) ........................................................................................24

*Collins v. BAC Home Loans Servicing LP*,
912 F. Supp. 2d 997 (D. Colo. Dec. 12, 2012) ......................................................................28

*Couveau v. Am. Airlines, Inc.*,
218 F.3d 1078 (9th Cir. 2000) ...............................................................................................21

PAGE ii – TABLE OF CONTENTS AND TABLE OF AUTHORITIES

*Creazzo v. Medtronic, Inc.*,
   903 A.2d 24, 2003 Pa. Super. 152 (Pa. Super. Ct. 2006)..........................................32

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) .........................................................................20, 21

*Davis v. Farm Bureau Bank, FSB*,
   No. SA-07-CA-967-XR, 2008 WL 1924247 (W.D. Tex. Apr. 30, 2008) ..............................21

*Drew v. Equifax*,
   690 F.3d 1100 (9th Cir. 2012) .......................................................................17, 18

*Duncan v. Walker*,
   533 U.S. 167 (2001).......................................................................................18

*Erlandson v. Ford Motor Co.*,
   No. 08 CV 1137-BR, 2009 WL 3672898 (D. Or. Oct. 30, 2009)...........................................31

*Ferrarelli v. Federated Fin. Corp. of Am.*,
   1:07 CV 685, 2009 WL 116972 (S.D. Ohio Jan. 16, 2009).....................................................34

*Giles v. Capital One Bank*,
   No. 3:12-cv-70 (CAR), 2012 WL 3600893 (M.D. Ga. Aug. 21, 2012) ................................19

*Gorman v. Wolpoff & Abramson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) .............................................................27, 28, 29, 30

*Joseph v. Burns*,
   260 Or. 493, 491 P.2d 203 (1971) ...................................................................20

*Kling v. Hallmark Cards Inc.*,
   225 F.3d 1030 (9th Cir. 2000) .......................................................................20, 21

*Krouse v. Ply Gem Pacific Windows Corp.*,
   803 F. Supp. 2d 1220 (D. Or. 2011) .................................................................24

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ..................................................................31, 32, 33

*McDonald v. Sun Oil Co.*,
   548 F.3d 774 (9th Cir. 2008) ...........................................................................20

*Nelson v. Chase Manhattan Mortgage Corp.*,
   282 F.3d 1057 (9th Cir. 2002) .......................................................................18

*Nyman v. City of Eugene*,
   32 Or. App. 307 (1978)................................................................................21

PAGE iii – TABLE OF CONTENTS AND TABLE OF AUTHORITIES

707220.0093/5736959.11

*Perez-Velasco v. Suzuki Motor Co.*,
    266 F. Supp. 2d 266 (D.P.R. 2003) ........................................................32

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    695 F.3d 946 (9th Cir. 2012) ......................................................20, 22

*Quaglietta v. Nissan Motor Co.*,
    No. 97-5965, 2000 WL 1306791 (D.N.J. Aug. 16, 2000) ......................32

*Reynolds v. Hartford Fin. Servs. Grp., Inc.*,
    435 F.3d 1081 (9th Cir. 2006) ......................................................34

*Saloum v. Wright*,
    No. 03:11-cv-00900-HU, 2013 WL 1914396 (D. Or. Feb. 6, 2013) ......................16

*Schaffhausen v. Bank of Am., N.A.*,
    393 F. Supp. 2d 853 (D. Minn. 2005) ......................................................35

*Silvestri v. Gen. Motors Corp.*,
    271 F.3d 583 (2d Cir. 2001) ......................................................33

*Thomas v. U.S. Bank N.A.*,
    CV 05-1725-MO, 2007 WL 764312 (D. Or. Mar. 8, 2007) ......................33, 34

*Underwood Cotton Co., Inc. v. Hyundai Merchant Marine (American), Inc.*,
    288 F.3d 405 (9th Cir. 2002) ......................................................19, 20

*Unigard Sec. Ins.Co. v. Lakewood Eng'g & Mfg. Co.*,
    982 F.2d 363 (9th Cir. 1992) ......................................................32

*United States v. Georgia-Pacific Co.*,
    421 F.2d 92 (9th Cir. 1970) ......................................................24

*Wanderer v. Johnston*,
    910 F.2d 652 (9th Cir. 1990) ......................................................31

*Westra v. Credit Control of Pinellas*,
    409 F.3d 825 (7th Cir. 2005) ......................................................28, 30

*Williams v. Taylor*,
    529 U.S. 362 (2000) ......................................................18

*Woodard v. Ford Motor Co.*,
    No. 1:11-cv-3092–CL, 2013 WL 3024828 (D. Or. June 13, 2013) ......................31

PAGE iv – TABLE OF CONTENTS AND TABLE OF AUTHORITIES

## STATUTES

15 U.S.C. § 1681i(a) ...........................................................................................................18

15 U.S.C. § 1681n ........................................................................................................33, 35

15 U.S.C. § 1681o ..............................................................................................................20

15 U.S.C. § 1681p ..............................................................................................................17

15 U.S.C. § 1681s .........................................................................................................passim

ORS 12.115 ..................................................................................................................19, 20

## RULES

Fed. R. Civ. P. 56..............................................................................................................16

PAGE v – TABLE OF CONTENTS AND TABLE OF AUTHORITIES

# I.  PRELIMINARY STATEMENT

Plaintiff Carlopi Thomasian has brought claims against Wells Fargo Bank, N.A. ("Wells Fargo") for willful and negligent violation of the Fair Credit Reporting Act, 15 § U.S.C. 1681, *et seq.*, respectively.  Essentially, plaintiff claims that she is not liable for a joint Wells Fargo credit card with her husband that was opened in September 1999, and that Wells Fargo failed to properly investigate her disputes over that limited issue, which Wells Fargo received through the national credit reporting agencies ("CRAs")[1] in late 2011 and 2012.  To succeed on her claims, however, plaintiff bears the burden of proving both that Wells Fargo's investigation was unreasonable and that the information reported was, in fact, inaccurate.  Plaintiff cannot, as a matter of law, satisfy her burden of proof on either of these issues.

Wells Fargo's records show that plaintiff and her husband jointly applied for a Wells Fargo credit card account in September 1999, which is identified by the partial account number -0110 (the "Account").  Wells Fargo has been reporting the Account as a joint account of plaintiff and her husband since that time, and the card was used without any complaint from 1999 until 2011.  Then, after an unpaid balance of more than $11,500 accumulated on the Account, plaintiff's husband filed for bankruptcy and received a discharge.  Wells Fargo began attempting to collect the unpaid balance from plaintiff, who only then, for the first time, disputed that she was an obligor.  Plaintiff filed disputes with each of the three CRAs, who provided Wells Fargo with notices of dispute in accordance with FCRA.

Each of the notices of dispute simply stated, in various ways, that plaintiff denied liability for the account.  Wells Fargo employees properly responded to each of the notices of dispute by reviewing all of the information provided on the ACDV dispute forms, and verifying its accuracy according to Wells Fargo's records, including that plaintiff was an obligor on the Account.  The

---

[1] The "CRAs" are Trans Union LLC ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax"), each of whom was named as a defendant in this action, and each whom has settled with plaintiff.

PAGE 1 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

notices of dispute provided no evidence to support plaintiff's assertion that she was not liable, and did not state that she was the victim of fraud or identity theft.  Wells Fargo's investigation was therefore reasonable as a matter of law, because there was no reason to doubt the accuracy of Wells Fargo's business records.  Even now, plaintiff admits she has no evidence to show that she was not an account obligor beyond her own assertions.

The reasonableness of Wells Fargo's investigation is also confirmed by examination of all available Wells Fargo records:

- The bank's system of record dating back to the Account opening in 1999 shows plaintiff as joint account holder and that her driver's license number was obtained at the time the Account was opened;

- Cards in plaintiff's name were sent on three different occasions (the original card and two renewals) and were never returned;

- Plaintiff called Wells Fargo regarding the Account in 2001 and was verified as a cardholder;

- Monthly account statements in plaintiff's name were sent to plaintiff every month since the Account was opened in 1999;

- Monthly rewards statements for the Account were also sent to plaintiff every month in her name as part of her Wells Fargo checking account statements;

- For more than 11 years after it was opened, plaintiff has never disputed ownership of the Account nor requested to be removed from it until after her husband's bankruptcy in 2011.

Moreover, Wells Fargo's investigation pursuant to this litigation has only further confirmed that its original investigation was both reasonable and correct.  Wells Fargo has uncovered electronic records from its former underwriting computer system, which indicates that the credit card was opened as a joint account by plaintiff and her husband via a paper application at a Wells Fargo Branch.  It provides the social security number of the branch employee who

assisted with the application, who testifies that she recognizes plaintiff and her husband and that she accepted their joint credit card application.  This is also corroborated by plaintiff's husband, who testified that the Account was opened by a paper application, but otherwise cannot recall the details of how it was opened.

Plaintiff admits receiving and keeping the original card issued to her, and that she never contacted Wells Fargo at any time to dispute her responsibility for the Account.  She did not deny calling Wells Fargo in 2001 and being verified as a cardholder, which is shown in Wells Fargo's records.  She admits making a payment on the account with a personally signed check in 2003.  She also admits receiving and reviewing the monthly billing statements, sent every month for over a decade, and seeing that she and her husband were listed as joint account holders.  Finally, numerous charges on the account were verifiably for plaintiff's direct benefit, including payments for her automobile insurance and repairs, her real estate training course, a cosmetic procedure she ordered for her son, and even a direct cash deposit into her joint checking account.  Nothing has been found to indicate that plaintiff was *not* a joint accountholder.  As a matter of law, plaintiff cannot meet her burden of showing that Wells Fargo's investigation resulted in any erroneous reporting, nor that the investigation was unreasonable.  Therefore, Wells Fargo is entitled to summary judgment on plaintiff's claims.

There are also multiple additional defenses to plaintiff's claim, any one of which entitles it to summary judgment.  Her claims are barred by FCRA's statute of limitations, and her negligence-based claim is barred by Oregon's 10-year statute of repose.  Plaintiff's claims are also barred by laches due to her unreasonable and prejudicial delay, having failed for more than 11 years to inform Wells Fargo that she disputed ownership of the Account.  Equitable estoppel also bars plaintiff's claim, because plaintiff has allowed Wells Fargo to extend credit based on her and her husband's joint creditworthiness, to its detriment, for more than 11 years.  Finally, plaintiff's claims are barred by her spoliation of evidence because she willfully failed to preserve and allowed the destruction of monthly credit card and checking account statements, the credit

PAGE 3 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

cards in question, and check registers and checks, which would have been further evidence to show knowledge and use of the Account.  For each of these independent reasons, plaintiff's claims should be dismissed and summary judgment granted in favor of Wells Fargo.

## II. <u>FACTS</u>

### A.     Origination of the Account.

Wells Fargo's business records show that the Account was opened as a joint account of plaintiff and her husband in September 1999.  (Declaration of Christopher Green in Support of Defendant Wells Fargo Bank N.A.'s Motion for Summary Judgment ("Green Decl.") ¶ 18, Exs. 1, 2.)  Wells's Fargo's FDR system records include plaintiff's Social Security number, driver's license number, and birthdate, all information that would only be obtained from a joint account holder.  (*Id.* Ex. 1 at 1, 20; Ex. 2 at 1, 17.)  A record entry originating the Account on September 30, 1999, lists plaintiff's driver's license number, as well as her husband's.  (*Id.* Ex. 1 at 20.)  Wells Fargo's form credit card paper application in effect at the time provided a field for the applicants to provide their driver's license numbers, while the online application did not. (*Id.* ¶ 25; Ex. 3.)  Therefore, the Account must have been opened by a paper application, which would have required the signatures of both joint applicants.  (*See id.*)

This conclusion is confirmed by the testimony of plaintiff's husband, who admits having applied for the Account.  He testified that the Wells Fargo card must have been opened with a paper application:  "I would say 100 percent. * * *  It couldn't be any other way."  (Declaration of Beverly C. Harmon in Support of Motion for Summary Judgment ("Harmon Decl.") Ex. 1 at 78-79.)  He testified that did not remember giving Wells Fargo his wife's personal information in opening the Account, and that he would not have done so without her consent.  (*Id.* at 80, 81 ("Q. But you wouldn't have put down that information for your wife?  A. No, I wouldn't.").)  Later answers speculated about what he might do, but the foregoing was clear.  For her part, plaintiff testified that she did not know how the Account was opened, nor did she ask her husband in 1999 or any time thereafter how it was opened or how she became associated with it.

PAGE 4 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

(*Id.* Ex. 2 at 187.)  Plaintiff even suggested she may have forgotten applying for it, stating, "I'm not answering the question because let me [ask] you a question:  In 1999 tell me what you applied for.  Do you remember?  No, you don't."  (*Id.* at 157.)

That the Account was opened jointly by a paper application is also confirmed by an electronic record created when the Account was opened, uncovered by Wells Fargo during discovery.  Wells Fargo located data in an electronic database, which came from its former credit card underwriting system, known as the BCA system.  (Declaration of Carmen Price in Support of Wells Fargo's Motion for Summary Judgment ("Price Decl.") ¶ 3, Ex. 1; Declaration of Lupe Freemen ("Freeman Decl.") ¶ 3; Ex. 1.)  This data shows that the Account was opened via a paper application.  (Freeman Decl. ¶ 5.)  The data also provides information identifying the employee who processed the application.  (*Id.* ¶ 6.)  Wells Fargo's employee records identify the employee as Ms. Kathleen DeBeaudry.  (Green Decl. ¶ 26.)  Ms. DeBeaudry's declaration confirms that she opened the Account for both plaintiff and her husband, remembers Mr. Thomasian as an auto broker, and in taking a joint credit card application, would have required both applicants to be present and to present identification.  (Declaration of Kathleen DeBeaudry in Support of Defendant Wells Fargo Bank's Motion for Summary Judgment ("DeBeaudry Decl.") ¶¶ 3-4.)  She confirmed she input information from the application into Wells Fargo's computer system and that information from the application is reflected in Exhibit 1 to her declaration.  (DeBeaudry Decl. ¶4; Ex. 1.)

Unfortunately, the original 1999 paper application, because of its age, is no longer available.  Wells Fargo's practice at the time was to transfer paper applications to microfiche.  (Green Decl. ¶ 24.)  In 2004, Wells Fargo attempted to transfer the microfiche copies to an electronic medium for more permanent storage, but it was found that some of them had deteriorated and could not be read, and the application in this case was likely among them.  (Green Decl. ¶ 24.)

PAGE 5 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

**B.     Plaintiff's Knowledge of the Credit Card Account.**

Plaintiff admits that she received the first Wells Fargo credit card in 1999, at the same time as her husband, and that it was issued in her name.  (Harmon Decl. Ex. 2 at 153, 200.)  She testified that spoke with her husband about the card, and that she then put the card into a filing cabinet.  (*Id*. Ex. 2 at 155, 203, 157 ("I got it and I–exactly what I told my husband, I said, "How come they're sending me [a] credit card?"); ("Q. You did–you did keep the card.  You put it in a cabinet, file cabinet or something.  A. 1999, yes.").)  According to Wells Fargo's records, replacement cards were also issued to plaintiff in April 2005 and March 2008.  (Green Decl. ¶ 17.)

Wells Fargo's records show that plaintiff called Wells Fargo on August 7, 2001, and was verified as a cardholder.  (Green Decl. ¶ 21, Ex. 1 at 19.)  The verification process required plaintiff to provide Wells Fargo with personal identifying information for the Account before being given account information or being allowed to make changes to the Account.  (*Id*. ¶ 21.)  Plaintiff does not deny that she placed the call, she simply claims she cannot remember.  (Harmon Decl. Ex. 2 at 74-76.)

Account statements for the Account were issued to plaintiff in her name every month since the Account was opened.  (Green Decl. ¶ 9.)  Plaintiff admits this in her Response to Wells Fargo's Request for Admissions.  (Harmon Decl. Ex. 3 at 3.)  She saw the Account statements with her and her husband's names on them.  (*Id*. Ex. 2 at 198 ("Q. Okay.  In fact you did see some written statements from Wells Fargo for this credit card account that came to your home over the last years since 1999 on some occasions.  A. Some occasions.").)

The Account statements were not the only monthly statements sent to plaintiff showing she was a joint account holder.  Plaintiff and her husband also had a Wells Fargo joint checking account (with account number ending -9573, the "Joint Checking Account"), which was affiliated with the card Account through a "Portfolio Management Account" or "PMA." (Green Decl. ¶¶ 4, 10.)  Every month, Wells Fargo sent plaintiff a statement for the PMA Joint

PAGE 6 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR
SUMMARY JUDGMENT

Checking Account, which also included a page listing the credit card Account, the rewards points earned with the card, the credit limit, card balance, and available credit. (Green Decl. ¶ 10; Ex. 6.) Plaintiff admitted she tried to review the PMA statements each month to make sure that the record was accurate. (Harmon Decl. Ex. 2 at 77.) She said she would, at least sometimes, look over the entire statement. (*Id.* at 77-78.) Plaintiff agreed the Account statements list both her name and her husband's name as joint account holders. (*Id.* at 79-80 ("Q. And then it's got your name and your husband's name on here to indicate it's a joint account. A. Yes."), 81-82 ("Q. And this shows a statement again for Thomas Thomasian and Carlopi Thomasian on it? A. Yes. Q. Again, indicating that's a joint account. A. Yes.").) By the time plaintiff first contacted Wells Fargo claiming not to be liable for the account, approximately 140 separate monthly statements for the Account had been sent to plaintiff in her name at her address, and an equal number of PMA statements confirming that plaintiff was a joint account holder of the Account.

Plaintiff first claimed during her deposition that she believed she was an authorized user, but she could not give any explanation how she became an authorized user. (*Id.* at 200 ("Obviously, you know, somebody put me as an—maybe my husband added me as an authorized user. I don't know. I really don't know.").) Plaintiff finally admitted, however, that prior to her husband's bankruptcy in 2011, she did not even know what an authorized user was. (*Id.* at 201.) She admitted that she had never received any information from Wells Fargo, either orally or in writing at any time, that she was an authorized user. (*Id.* at 201.) Her husband testified that he does not know how plaintiff would have come to be an authorized user:

> Q.   And you don't have any memory of ever filling out an application, either on the Internet or paper copy, and on it listing your wife as an authorized user of this Wells Fargo credit Card? You don't have any memory of that either, do you?
>
> A.   I don't think so, no.

PAGE 7 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

(Harmon Decl. Ex. 1 at 94.)  Mr. Thomasian further testified that he has no memory of talking with anyone at Wells Fargo about his wife being an authorized user or listing her as an authorized user in any application for the Account.  (*Id.* at 94.)

## C.    Plaintiff's Use and Benefit from the Credit Card Account.

Plaintiff made a payment on the Account by check on October 23, 2003; the amount was for exactly $71.50.  (Green Decl. ¶ 8, Ex. 4 at 2.)  This is the exact amount of a charge to the account dated September 24, 2003, and listed on the Account statement dated October 6, 2003, for "Pre Enroll Inc."  (*Id*. Ex. 5 at 2.)  The amount of the payment was not the amount due for that month ($41.09) nor the minimum payment ($15.00).  (*Id*. Ex. 5 at 1.)  She also filled out the card payment slip listing that amount.  (*Id*. Ex. 4 at 1.)

Over the life of the Account, there have also been numerous charges that benefitted plaintiff, for example:

- Plaintiff is a real estate agent with RE/MAX.  (Harmon Decl. Ex. 2 at 16.)  She enrolled in a course in "advanced real estate practices" with Online Ed on July 6, 2006, the next day, on July 7, 2006, a charge of $230 was posted on the Account for "Online Ed Inc" in Lake Oswego, OR.  (Harmon Decl. Ex. 4; Green Decl. Ex. 5 at 10.)

- In January 2006, plaintiff admits she and her husband went shopping at Dania and purchased a couch, paid for with the Account.  (Harmon Decl. Ex. 2 at 119-20; Green Decl. Ex. 5 at 8.)

- On February 15, 2011, a few months before her husband filed bankruptcy, $1,000 was charged to the Account and deposited directly to plaintiff's joint checking account.  (Green Decl. Ex. 5 at 17 (showing online advance of $1,000); Ex. 6 at 12 (showing $1,000 deposit via online transfer from the Account).)

- On March 4, 2011, plaintiff contracted for laser hair removal services for her son, Tony. (Harmon Decl. Ex. 1 at 147-48; Ex. 11.)  Payment was made with the Account. (Green Decl. Ex. 5 at 17.)

- On January 28, 2009, a $2,180 card charge was made to pay Hartford Insurance Co., the insurance carrier for plaintiff's automobile, as well as her children's. (Green Decl. Ex. 5 at 12; Harmon Decl. Ex. 2 at 131, 137-38.)

- Plaintiff admitted that she and members of her family went to Barnes Dental for services.  (Harmon Decl. Ex. 2 at 112-13.)  Charges for Barnes Dental appear on the Account on October 5, 2005, October 12, 2005, and November 4, 2005.  (Green Decl. Ex. 5 at 4, 6.)

PAGE 8 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR
             SUMMARY JUDGMENT

- Plaintiff admitted that she shops at TJ Maxx, Marshalls, and Target. Charges were made on the Account for each of these stores. (Harmon Decl. Ex. 2 at 36, 114; Green Decl. Ex. 5 at 8, 14, 17.)

- Plaintiff drives a Mercedes-Benz. (Harmon Decl. Ex. 2 at 146-47.) On February 23, 2011, there is a charge for $307.44 to Mercedes-Benz of Wilsonville, OR. (Green Decl. Ex. 5 at 17.) On May 3, 2011, there is also a charge for Mercedes MBrace, an in-car service available for Mercedes-Benz vehicles. (Green Decl. Ex. 5 at 20.)

- On October 31, 2008, two rewards checks were issued from the Account and deposited into the joint checking account. (Green Decl. Ex. 1 at 15; Harmon Decl. Ex. 13 at 2.)

**D.    Plaintiff's Disputes.**

In June 2011, plaintiff's husband declared bankruptcy and ultimately received a discharge of liability for more than $11,500 owing on the Account. Voluntary Petition, No. 11-35497-rld7 (Bankr. D. Or. June 24, 2011) (ECF No. 1); Discharge of Debtor (Sep. 29, 2011) (ECF No. 9). After his discharge, Wells Fargo removed him from the Account and left sole liability with plaintiff. (Green Decl. ¶ 2, Ex. 1 at 11.) Thereafter, Wells Fargo made several attempts by telephone and letters to plaintiff to obtain payment on the Account.

**1.    Direct Disputes to Wells Fargo—No FCRA Liability.** Wells Fargo's records show that plaintiff first contacted the bank to dispute her responsibility for the Account on July 22, 2011, when she called and claimed she was unaware of the account. (Green Decl. Ex 1 at 11.) She was informed that she had been the secondary obligor and had become the primary after her husband's bankruptcy. (*Id.*) She called Wells Fargo again on August 9, 2011, claiming that she did not sign up for the card. (*Id* at 10.)

Plaintiff then wrote a letter to Wells Fargo on August 13, 2011, stating she did not request the card, activate it, or use it. (*Id*. Ex. 7.) She claimed that she had no knowledge of the card and that her husband had used it mainly for his business. (*Id.*) She requested that Wells Fargo remove her name from their data base and stop making collection calls. (*Id.*) This was interpreted as a "cease and desist" letter, and the bank ceased collection calls on the Account. (Green Decl. Ex. 1 at 8.)

PAGE 9 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

On September 15, 2011, plaintiff sent a letter to the executive office stating that she did not apply for the credit card, sign for it, or activate it and requested proof of her signature. (Green Decl. Ex. 8.)  She instructed Wells Fargo not to call her regarding the Account, and to send any correspondence via mail so that she would have a written record of it.  (*Id.*)  Wells Fargo employee John Bradley investigated Wells Fargo's records and responded to plaintiff's letter on September 26, 2011.  (*Id.* Ex. 9.)  He informed plaintiff that it appeared the Account had been opened electronically and there was no signature to provide her.  (*Id.*)  Nevertheless, he informed her that electronic applications still create binding contracts, and that Wells Fargo had opened the Account in good faith and allowed it to be used for the purchase of goods and services for over 11 years.  (*Id.*)  He also stated that account statements had been sent to plaintiff every month since the inception of the Account.  (*Id.*)

Mr. Bradley explained at his deposition that he had been mistaken in concluding that the application was an online electronic application.  (Harmon Decl. Ex. 5 at 22-23.)  He had seen a flag in the electronic records that indicated an online application, but after the lawsuit was filed, he determined he had been mistaken.  (*Id.*)  Mr. Bradley also explained that because of the age of the Account, even had he realized it was a paper application, the original application likely would not have been available to him.  (*Id.* at 26.)  This is because paper applications at that time were transferred to microfiche, but when the bank attempted to transfer those documents to an electronic medium in approximately 2004, a number had deteriorated and could not be read. (*Id*. at 26.)

Mr. Bradley explained that, in the absence of a signature, he would—and in this case did—attempt to further verify that the customer was an account holder by investigating records for the Account.  (*Id*. at 28.)  His review showed plaintiff's name, address, date of birth, Social Security number, and driver's license number in the Account records.  (*Id*. at 28.)  He explained that if plaintiff had been an authorized user (which would mean she was not liable for the Account), Wells Fargo would only need her name—there would be no reason to have the other

PAGE 10 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

personal information.   (*Id.* at 28-29.)   He also saw records that plaintiff had contacted Wells Fargo regarding the Account in 2001.   (*Id.* at 29; *see also* Green Decl. Ex. 1 at 19.)   He also noted that the records did not show *any* previous dispute regarding the Account and that monthly billing statements had been sent to plaintiff in her name and to her address for "about 11 or 12 years at that time."   (Harmon Decl. Ex. 5 at 29.)   Finally, he noted that plaintiff had never claimed to have been the victim of fraud (someone else listing her on the Account), although she had been offered the opportunity to contact Wells Fargo's fraud investigations department in her recent call to Wells Fargo.   (*Id.* at 29.)

        **2.**      **Credit Bureau Disputes.**   Wells Fargo received notices of dispute from each of the CRAs.   These are the bases for plaintiff's actual claims in this lawsuit.   Below is a chart showing the date of each notice of dispute, from whom it was received, and the information provided to Wells Fargo describing the nature of the dispute:

| Date | Agency | Information Provided |
|---|---|---|
| 2/23/12 | Equifax | Dispute Code 1: 001:  Not his/hers. Provide or confirm complete ID |
| 2/29/12 | TransUnion | Dispute Code 1: 001:  Not his/Hers. Provide or confirm complete ID. |
| 3/6/12 | Experian | Dispute Code 1: 1 |
| 4/3/12 | TransUnion | Dispute Code 1: 101: Not liable for account (i.e. ex-spouse, business). If liable, provide or confirm complete ID and ECOA Code.[2] <br><br> Dispute Code 2: 111: Claims company will delete. Verify all account information. |

---

[2] ECOA stands for Equal Credit Opportunity Act, but ECOA codes are codes that indicate the ownership of the account.  For example, there is one code that means the account is an individual account and another that indicates joint liability.

PAGE 11 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

| Date | Agency | Information Provided |
|------|--------|----------------------|
| 4/11/12 | Equifax | Dispute Code 1: 1.  CONSUMER PROVIDE LETTER OF WELLS FARGO DATED 09262011 STATES THAT THIS ACCOUNT WAS OPENED ON 09301999 BY AN ELECTRONIC APPLICATION AND IT WAS CLOSED ON 06092011 BY JOHN BRADLEY |
| 4/19/12 | Experian | Dispute Code 1: 1.  LTTR FROM WF DTD 09/26/11 STTS NO SIGNATURES ARE REQUIRED FOR THIS TYPE OF ELECTR APPLICATIONS |
| 8/27/12 | TransUnion | DC 101.  IN 1999 THOMAS THOMASIAN OPENED CREDIT ACCOUNT, I DID NOT ACTIVATE, SIGN IT, ACCESS IT, MAKE PURCHASES IN ANY WAY. THOMAS THOMASIAN MADE ALL PAYMENTS |
| 9/12/12 | Experian | Dispute Code 1: 112: Consumer states inaccurate information. Provide or confirm complete ID and account information.  FRCA Relevant Information: EX-HUSBAND HAD THIS CARD.  I NEVER USED IT. HE FILED FOR BANKRUPTCY IN 2011. |

(Declaration of Maria Reeves in Support of Defendant Wells Fargo Bank N.A.'s Motion for Summary Judgment ("Reeves Decl.") ¶ 12; Exs. 1-7.)

Even the most detailed of these notices failed to provide more than a summary of plaintiff's assertion that she was not liable for the Account.  No evidence or explanation for her contention was provided.   Two of the disputes refer to the Bradley letter, meaning an investigation of plaintiff's dispute had already been done.  Wells Fargo's records, which were accessible to the employees investigating this dispute, contain notes giving a summary of the prior investigation by Bradley and his findings.  (Green Decl. Ex. 1 at 1-11.)

A Wells Fargo representative, Maria Reeves, explained how these notices of dispute are received by Wells Fargo through an electronic system, and came on the standardized "automated credit dispute verification" form, or "ACDV."  (Harmon Decl. Ex. 6 at 24-25.)  She testified that in response to an ACDV, Wells Fargo's procedure is to review all account information and the dispute code provided by the CRA, to verify or correct the specific information received from the

PAGE 12 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

CRA by comparing it to the information contained in Wells Fargo's records, and to return the form to the CRA. (*Id*. at 25.) In response to each of the notices of disputes received in this case, Wells Fargo verified that the information provided was correct according to Wells Fargo's records—in particular, that plaintiff was liable for the Account—and accurately filled out and returned the ACDV Response form to the CRA. In each case, Wells Fargo also reported that the Account information was disputed by the customer. (Reeves Decl. Exs. 1-7; ¶ 12.)

Ms. Reeves described in detail the steps Wells Fargo takes to respond to an ACDV notice. For example, with regard to "dispute code 1" (plaintiff's dispute), which stands for "not his/hers," she explained Wells Fargo's standard procedure. The first step is to verify whether Wells Fargo's records show the same person as the account cardholder. (*Id*. at 31–32.) Second, it reviews its records to see if there have been previous claims of fraud, fraudulent charges, or lost or stolen accounts. (*Id*. at 32.) The third step is to review for bankruptcy information, because frequently one spouse files for bankruptcy and the other co-signer spouse does not think he or she is liable for the account. (*Id*. at 32.) Fourth, Wells Fargo reviews the record to verify whether the customer was an authorized user of the account, rather than a co-owner of the account. If the customer is only an authorized user, Wells Fargo will remove the customer's name and ECOA code so the person is no longer listed as a responsible party. (*Id*. at 32.) Fifth, Wells Fargo verifies whether the customer is liable for a joint account by verifying the code in the bank's records. (*Id.* at 32.) Sixth, Wells Fargo checks whether the account is open because the customer failed to close the account or the status is otherwise incorrect. (*Id*. at 32.) Finally, Wells Fargo reviews the FDR memoranda for any other information that appears relevant to the dispute. (*Id*. at 32-33.)

Wells Fargo has specified procedures for responding to each of the dispute codes that are provided by the CRAs. (Harmon Decl. Ex. 6 at 31-33.) For Dispute Code 101 ("Not liable for account"), Wells Fargo would review their system of record to determine if liability exists and whether the dispute was initiated by an authorized user. (*Id*. at 128-29.) If the records indicate

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200
707220.0093/5736959.11

that the customer is not liable or was only an authorized user, Wells Fargo would remove the customer's name from the account and delete the ECOA code. (*Id*. at 129.) Wells Fargo would determine if the customer was liable by verifying the name, social security number, address, and date of birth. (*Id* at 129-130.) For Dispute Code 111 ("claims company will delete"), Wells Fargo would review the system of record to determine whether any system memo shows the account will be deleted or that there was fraud on the account. (*Id*. at 130-31.) For Dispute Code 112 ("claims inaccurate information"), Wells Fargo would confirm the customer's identity, verify account information, identify the customer's information in the system, and review the system of record to verify that the information reported is correct. (*Id*. at 150.) Wells Fargo would also look to see if the customer is only an authorized user and, if so, delete the customer's name and ECOA code. (*Id*.)

**3.** **Plaintiff Did Not Claim Fraud, Nor Did She Provide Evidence That Information Was Inaccurate.** Plaintiff has never claimed that she was the victim of identity theft or fraud—i.e. that her husband or someone else obtained a card in her name by fraudulently providing her personal information. (Harmon Decl. Ex. 5 at 29; Ex. 6 at 34.) In fact, when plaintiff spoke to Wells Fargo in disputing her liability directly, plaintiff was advised that she could contact Wells Fargo's fraud department to pursue her dispute further. (*Id*. Ex. 2 at 62-63; Green Decl. Ex. 1 at 9.). She did not do so, and even now does not claim that her husband committed a fraud on her. (Harmon Decl. Ex. 2 at 361; Ex. 5 at 36.)

What is most striking about plaintiff's disputes, besides their frequency, is that plaintiff provides *no* evidence. In fact, she admitted she has no evidence to show she is not an owner of the Account. (*Id*. Ex. 2 at 185-86.) She also admitted that she did not provide any evidence to Wells Fargo to support her claim that she was not liable beyond simply denying liability in her letters. (*Id*. at 205.) She did not even ask her husband, either in 1999 or any time thereafter, how he got the Account or how she came to be associated with it. (*Id*. at 187.) Nor did she ever ask her husband to contact Wells Fargo to confirm her story in this case. (*Id*. at 184.)

PAGE 14 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

**E.      The Complaint.**

On August 8, 2012, plaintiff filed a complaint against Wells Fargo as well as the three major credit reporting agencies Experian, Equifax, and TransUnion.  Plaintiff alleges two claims for alleged violations of Wells Fargo's duties as "a person who furnishes information" under 15 U.S.C. § 1681s-2.  In particular, plaintiff alleges that Wells Fargo received written notices of the dispute from the CRAs, Wells Fargo's investigation was not reasonable, and as a result, Wells Fargo reported and allowed the dissemination of false information about plaintiff. (Compl. ¶¶ 12, 19.)  Plaintiff also alleges that the bank failed to advise Experian that the account was disputed by plaintiff.  (*Id.* ¶¶ 12, 19.)[3]  Plaintiff alleges that Wells Fargo's alleged failure to perform a reasonable investigation was willful and, alternatively, that it was negligent. (*Id.* ¶¶ 12, 19.)  She claims that Wells Fargo's conduct has caused her "loss of income,[4] denials of credit, worry, fear, emotional distress, frustration, anxiety, invasion of privacy, damage to reputation, embarrassment, humiliation and lost opportunity to obtain credit." (*Id.* ¶¶ 13, 21.)

**F.      Plaintiff's Destruction of Evidence.**

Plaintiff admitted that monthly statements have been sent to her address every month since the credit card Account was opened in 1999.  (Harmon Decl. Ex. 3 at 3.)  Yet, in response to Wells Fargo's discovery requests, including requests for all statements for the Joint Checking Account and all statements relating to the credit card Account, plaintiff produced 203 pages of documents, but did not produce a single copy of a statement for the credit card Account, or the Joint Checking Account.  (*Id.* ¶ 8; Ex. 7 at 6; Ex. 8.)  Plaintiff has also not produced any of the cards that were issued to her in connection with the credit card Account.  (Harmon Decl. ¶ 8; Ex. 8.)  Plaintiff has also failed to produce copies of her credit report going back to April 16,

---

[3] Wells Fargo does not believe there is still a dispute about this.  The documents clearly show that Wells Fargo reported to Experian that the customer disputed the credit card Account. (Reeves Decl. Exs. 3, 6, 7.)  To the extent that plaintiff maintains this claim, summary judgment should readily be granted in favor of Wells Fargo as to such claim.

[4] Plaintiff admitted under oath that she suffered no loss of income, and her counsel stated on the record that this was his mistake in drafting the complaint.  (Harmon Decl. Ex. 2 at 270-71.)  If plaintiff has not withdrawn this claim, Wells Fargo is entitled to summary judgment on it.

PAGE 15 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR
SUMMARY JUDGMENT

2008, which she ordered as part of her Equifax credit watch service. (Declaration of Latonya Munson ("Equifax Decl.") ¶ 6; Harmon Decl. ¶ 8; Ex. 8.) Plaintiff admits to making handwritten markings on one copy of an Equifax credit report that was produced in discovery. (Harmon Decl. Ex. 3 at 2.)

Plaintiff's husband testified that he destroyed all copies of statements for both the credit card Account and their Joint Checking Account. (Harmon Decl. Ex. 1 at 55-57, 64.) Mr. Thomasian testified that plaintiff was aware that he was destroying Wells Fargo documents. (*Id*. at 56, 69.) This occurred not only after plaintiff was aware of the credit card Account, but after plaintiff began to dispute with Wells Fargo that she was liable for the Account. (*Id*. at 55- 57, 64.) Plaintiff's husband further admitted in his deposition that he threw away at least one credit card that was issued in plaintiff's name. (*Id*. at 69-70.) Mr. Thomasian testified that he destroyed any remaining documents after August 2012 when they sold the house. (*Id*. at 55-56.) Therefore, these documents, and any handwritten markings on them that could show charges plaintiff made or acknowledged on the Account, are not available to Wells Fargo for its defense.

## III. <u>ARGUMENT</u>

### A.    **Legal Standard.**

Under Rule 56, a party is entitled to summary judgment if it shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On the issues where the non-moving party (here, plaintiff) bears the burden of proof, the moving party (Wells Fargo) need only show that there is an absence of evidence to support plaintiff's claims. *See Saloum v. Wright*, No. 03:11-cv-00900-HU, 2013 WL 1914396, at *1 (D. Or. Feb. 6, 2013) (citing *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

PAGE 16 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR
SUMMARY JUDGMENT

Where the movant meets its burden, to avoid summary judgment, the opposing party must show that there is a genuine dispute as to a material fact:  in other words, it must present evidence sufficient for a reasonable jury to render a verdict in its favor on a factual issue that might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50.

**B.     Plaintiff's Claims Are Barred by Her Delay.**

The Court need not reach the substantive FCRA issues in this case, because plaintiff's claims are untimely and should be barred either by applicable statutes of limitations, or by the equitable doctrine of laches.

**1.     Plaintiff's claims are barred by FCRA's statute of limitations.**     FCRA provides that a claim must be brought before the earlier of "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs."  15 U.S.C. § 1681p.  Plaintiff here alleges that Wells Fargo furnished false information to the CRAs.  (Compl. ¶¶ 12, 19.)  The only item of information, however, that is alleged to be false is that plaintiff is an obligor on the Account.  But, Wells Fargo has been reporting that plaintiff is responsible for the Account since 1999, well beyond FCRA's five-year limitations period.   (Green Decl. ¶ 22; Harmon Decl. Ex. 12 at 5; Equifax Decl. ¶ 8.)  Plaintiff also purchased credit reports showing how Wells Fargo was reporting the Account at least as early as April 16, 2008.  (Harmon Decl. Ex. 9 at 4; Equifax Decl. ¶¶ 9; Green Decl. ¶ 22.)  This is beyond the two-year limitations period.

Wells Fargo acknowledges the Ninth Circuit's decision in *Drew v. Equifax*, 690 F.3d 1100 (9th Cir. 2012), which, in interpreting FCRA's two-year limitations period, held that it runs from the time plaintiff discovers defendants' investigation, not the time plaintiff discovers the allegedly false information is being reported.  That interpretation, however, has a strange result: because a plaintiff is required to file a dispute with a CRA in order to trigger a violation, a

PAGE 17 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR
SUMMARY JUDGMENT

plaintiff can wait an unlimited amount of time before ever disputing a furnisher's information and still be timely.  But that was not the purpose of the CRA dispute requirement:  it was intended to be a filtering mechanism, so that furnishers are not bombarded with lawsuits for every perceived inaccuracy in a credit report.  *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).  It is strange to allow a provision intended to reduce the burden on furnishers to essentially eviscerate the statute of limitations.  In *Drew v. Equifax*, the result of the court's interpretation was not so extreme—the plaintiff's claim would have been only four months late under the contrary interpretation.  Here, however, plaintiff complains of allegedly incorrect information that has been reported to the CRAs for more than 11 years.

But, even if the two-year period should be so interpreted, the five-year limitations period in subsection 1681p(2) cannot, because that would render the entire subsection superfluous.  "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Market co. v. Hoffman*, 101 U.S. 112, 115 (1879)).  If the five-year period is only triggered by the investigation, rather than the furnishing of false information, the entire provision would be effectively eliminated.  When a customer initiates a dispute, the furnisher has 30 days to respond.   15 U.S.C. § 1681s-2(b)(2) (referencing the time period provided in 15 U.S.C. § 1681i(a)(1)).  So, if the information is not corrected within that time period, plaintiff would be on notice of the claim, triggering the two-year period.  Thus, the five-year period would never apply because the plaintiff would *always* know whether the furnisher had corrected the disputed information within the allotted time.  But Congress could not have intended to include a limitations period that would never apply.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) (describing the rule against surplusage as a "cardinal principle of statutory construction.").

The surplusage is avoided by interpreting section 1681p(2), the five-year period, to run from the date the allegedly false information is furnished.  The Ninth Circuit in *Drew* did not

PAGE 18 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

analyze the five-year period, nor was it confronted with the surplusage that would result in interpreting "the violation" the same way as it did with respect to the two-year period.

This interpretation is consistent with the language of the statute. The Court can interpret "the violation" to mean the furnishing of false information, which is indeed prohibited by FCRA section 1681s-2(a)(1)(B)(ii), and which is a necessary element of plaintiff's claim. After all, it is the falseness of information that can harm a person. *See also* 15 U.S.C. § 1681(a) (listing FCRA's purposes, including that "[t]he banking system is dependent upon fair and accurate credit reporting."). Thus, to interpret "the violation that is the basis for such liability" as the furnishing of the allegedly false information squares with the language and purpose of the statute, and avoids a major surplusage that could not have been intended.

In fact, numerous district courts have already interpreted FCRA's statutes of limitations to run from the publication of the allegedly false information. *See, e.g.*, *Giles v. Capital One Bank*, No. 3:12-cv-70 (CAR), 2012 WL 3600893 (M.D. Ga. Aug. 21, 2012) (holding that claims would be barred because the defendant was alleged to have "reported wrongful and inaccurate information" more than five years before the filing date); *Brian M. v. Recontrust Co., N.A.*, No. CIV S-11-1477 GEB DAD PS, 2012 WL 467405, *4 (E.D. Cal. Feb. 13, 2012) (holding that furnisher liability claims were barred by the statute of limitations even though no notice of dispute had been filed with a credit reporting agency); *Andresakis v. Capital One Bank (USA) N.A.*, No. 09 CV 8411(DAB), 2011 WL 1097413 (holding that plaintiff was on inquiry notice of the FCRA violation from the time he was denied a loan on the basis of his credit history).

Because the disputed information was first furnished by Wells Fargo back in 1999, the Court should hold that plaintiff's claims are barred by FCRA's five-year statute of limitations.

    **2.**    **Plaintiff's negligence claim is also barred by Oregon's statute of repose.**

Under Oregon law, a statute of repose bars any negligence claim 10 years from "the act or omission complained of." ORS 12.115. Unlike a statute of limitations, a statute of repose is not triggered by the accrual of a cause of action. *Underwood Cotton Co., Inc. v. Hyundai Merchant*

PAGE 19 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

*Marine (American), Inc.*, 288 F.3d 405, 408-09 (9th Cir. 2002).  A statute of repose "can be said to destroy the right itself.  It is not concerned with the plaintiff's diligence; it is concerned with the defendant's peace."  *Id.  McDonald v. Sun Oil Co.*, 548 F.3d 774, 779-80 (9th Cir. 2008) (quoting *Underwood Cotton*, 288 F.3d at 408-09).

The Oregon Supreme Court has explained that this statute of repose runs from the "*initial* negligent act or omission, and does not refer to any ongoing duty to correct the initial wrong." *See Cereghino v. Boeing Co.*, 826 F. Supp. 1243 (D. Or. 1993) (discussing the holding of *Joseph v. Burns*, 260 Or. 493, 491 P.2d 203 (1971)).  In this case, plaintiff's claim under 15 U.S.C. § 1681o is based on negligence, for failure to properly investigate plaintiff's dispute over allegedly incorrect information on her credit report.  But the initial "act or omission" which plaintiff must prove, the furnishing of that allegedly incorrect information, first occurred in 1999 when Wells Fargo began reporting that the Account was plaintiff's responsibility.  This was more than 10 years before this lawsuit was filed in August 2012.  Therefore, plaintiff's claim based on that act is barred by ORS 12.115.

**3.    Plaintiff's claims are barred by laches.**  The Ninth Circuit has applied the doctrine of laches to bar a technically timely claim where plaintiff has unreasonably and prejudicially delayed.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001) ("We have already determined that laches may sometimes bar a statutorily timely claim."); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946 (9th Cir. 2012); *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1039 (9th Cir. 2000).  The reason is to close loopholes in statutes of limitations like the one in this case.  As the Ninth Circuit explained in *Kling*:

> Applying this statute [of limitations], this court has held that a "cause of action * * * accrues when one has knowledge of a violation or is chargeable with such knowledge."  But while the statute of limitations is triggered only by violations—i.e., actual infringements—the laches period may be triggered when a plaintiff *knows or has reason to know about an impending infringement*.

* * *

PAGE 20 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

> Thus, a [plaintiff] would be vulnerable to the laches defense if he
> had knowledge of a planned infringement more than three years
> prior to filing his action, even if he complied with the statute of
> limitations by filing less than three years after the infringement
> actually began.

225 F.3d at 1039.

Laches is an equitable defense that bars a claim where a plaintiff "with full knowledge of the facts, acquiesces in a transaction and sleeps upon [her] rights." *Danjaq*, 263 F.3d at 950-51. Laches is shown by demonstrating (1) that the plaintiff has unreasonably delayed and (2) that this delay has prejudiced the defendant. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). At least one court has analyzed whether a FCRA claim was barred by laches, but on the facts of that case found that the standard was not met. *See Davis v. Farm Bureau Bank, FSB*, No. SA-07-CA-967-XR, 2008 WL 1924247 (W.D. Tex. Apr. 30, 2008).

      **a.**    **Plaintiff's delay of more than 11 years is unreasonable as a matter of law.** The reasonableness inquiry looks to whether there is some legitimate reason for plaintiff's delay. *Danjaq*, 263 F.3d 942, 945. Here, there is no justification for plaintiff to have waited 11 years. She admits she received the credit card with her name on it in 1999. She admits the bank issued account statements in her and her husband's name every month since 1999 and sent them to her address. She agreed that being identified on the account statement meant that she was a joint account holder. She further testified that in 1999, she demanded an explanation from her husband for the card but never contacted Wells Fargo about it until after the bankruptcy in 2011. Plaintiff was on notice that Wells Fargo was treating her as a cardholder, and that is sufficient for the laches analysis. *See Nyman v. City of Eugene*, 32 Or. App. 307, 320 (1978) (Plaintiff's claims are barred if she "is chargeable with knowledge she might have obtained upon inquiry if she had knowledge of facts which would have put a duty to inquire on a person of ordinary intelligence.") Instead of contacting Wells Fargo and requesting to be removed from the account, plaintiff admits that she did nothing until 11 years later, after her husband's liability had been discharged in bankruptcy.

PAGE 21 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's delay was the opposite of reasonable:  in fact, she benefitted from her silence. By allowing Wells Fargo to operate under what she believed to be a misunderstanding, much of the credit extended on the Account was used for plaintiff's direct benefit.  Wells Fargo extended this credit on the understanding that *both* plaintiff and her husband would be obligated to repay it.  (Green Decl. ¶ 19.)  Her husband, too, was able to enjoy credit extended on the basis of their joint creditworthiness.  It is not fair to allow plaintiff to enjoy the benefits of the card believing the benefits were due to a mistake, and still retain the right to sue Wells Fargo on that basis 11 years later.

      **b.    Plaintiff's delay substantially prejudiced Wells Fargo.**  There are two primary forms of prejudice in the laches context.  The first is reliance- or expectation-based prejudice, which exists when a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."  *Petrella v. MGM*, 695 F.3d 946 (9th Cir. 2012) (quoting *Danjaq*, 263 F.3d at 955).  The second is "evidentiary prejudice," resulting from "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Id.*  In this case, plaintiff's delay has caused both forms of prejudice to Wells Fargo.

      **(1)    Wells Fargo would not have extended credit on the same terms if plaintiff had initially asked to be removed from the Account.**  Wells Fargo extended credit on the Account on the basis of the joint creditworthiness of plaintiff and her husband.  On that basis, the original limit of $6,000 was increased on several occasions, ultimately allowing accumulation of an unpaid balance of more than $11,500 by the time Mr. Thomasian filed for bankruptcy in 2011.  This harms Wells Fargo, because Mr. Thomasian has been discharged from any obligation on the debt and plaintiff has refused to repay it.  If plaintiff had informed Wells Fargo in 1999 that she did not want to be associated with the Account, Wells Fargo (i) would have been able to remove plaintiff from the Account, and (ii) make an informed decision about the amount of credit to extend on the Account.  (Green Decl. ¶¶ 19-20.)

PAGE 22 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

Defendant was not able to do so because of plaintiff's conduct.  Wells Fargo has been thereby prejudiced.

(2)  **Wells Fargo also has been prejudiced because there has been a deterioration and/or loss of relevant evidence, both by plaintiff and Wells Fargo.**  Plaintiff's delay has resulted in the destruction by her and her husband of critical evidence.  Plaintiff has not produced any of the approximately 140 credit card Account statements that were sent to her since the account was opened, nor has she produced any of the 140 PMA Joint Checking Account statements also sent during that period.  That is because her husband was destroying them, with her knowledge.  She also no longer has the original credit card she received, and cannot explain what happened to it, even though she testified she originally put it in a file cabinet.  Plaintiff has not been able to produce any of the other renewal credit cards issued to her either.  All of this is important evidence, and its absence prejudices Wells Fargo's ability to defend itself in this action.  A critical issue in this case is whether plaintiff accepted the credit card, but the cards themselves have been lost, as well as the related statements, which she admitted reviewing and which could show notations about use of the Account.  We have identified one document from 2011 where plaintiff admits to making a handwritten mark about the Account, and a check she wrote to pay on the Account.  Wells Fargo is entitled to the opportunity of receiving other similar evidence for its defense.

The age of this account has also made it difficult for Wells Fargo to investigate this claim.  Most importantly, the original application in this case was likely transferred to microfiche in 1999.  However, by 2004 much of the microfiche was unreadable.  Given the amount of time that has passed, it has also been difficult to find witnesses who are familiar with the systems that were used in 1999.  If plaintiff had disputed this account when she first learned that Wells Fargo believed her to be an obligor, it is certain that Wells Fargo would have found the original application and shown that plaintiff had signed it (in addition to being able to remove plaintiff

PAGE 23 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

from the Account, if she so requested).  Wells Fargo has been able to locate only limited electronic data that was input from the original paper application.

Plaintiff's inexcusable delay is unreasonable as a matter of law and has substantially prejudiced Wells Fargo.  Therefore, her claims should be dismissed and summary judgment granted in favor of Wells Fargo.

## C.  Plaintiff's Claims Are Barred by Equitable Estoppel.

Plaintiff's claims are also barred on the independent ground of equitable estoppel.  Any claim, either at law or in equity, will be barred where the plaintiff's conduct has caused detrimental reliance by the defendant.  *See United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) (citations omitted).  "He who keeps silent when duty commands him to speak shall not speak when duty commands him to keep silent."  *Id.*  "Equitable estoppel is a rule of justice which, in its proper field, prevails over all other rules."  *Id.* (quoting *City of Chetopa v. Board of County Com'rs.*, 156 Kan. 290, 133 P.2d 174, 175 (1943).  Equitable estoppel "may, in proper cases, operate to cut off a right or privilege conferred by statute or even by the Constitution."  *City of Chetopa*, 133 P.2d at 175 (citation omitted).

Equitable estoppel is established if four elements are satisfied: (i) the plaintiff knows the relevant facts; (ii) the plaintiff intends that his or her conduct shall be acted on, or acts such that the defendant has a right to believe it is so intended; (iii) the defendant is ignorant of the true facts; and (iv) the defendant detrimentally relies on plaintiff's conduct.  *Georgia-Pacific*, 421 F.2d at 97; *Krouse v. Ply Gem Pacific Windows Corp.*, 803 F. Supp. 2d 1220, 1223 (D. Or. 2011).  Affirmative conduct is not required.  A plaintiff may be estopped by her simple failure to speak when she has a duty to do so:  it is sufficient to show that the plaintiff "has stood by and permitted the expenditure of large sums of money upon the faith and belief that [the plaintiff] does not deem his rights to be violated."  *Georgia-Pacific*, 421 F.2d at 97 (quoting *Management & Inv. Co. v. Zmunt*, 59 F.2d 663, 664 (6th Cir. 1932)).

PAGE 24 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

In this case, plaintiff's claims are barred because she has known of the existence of the Account and related charges and statements since 1999, and knew or should have known that Wells Fargo believed her to be a joint account holder. Instead of advising Wells Fargo of any mistake, and being removed in 1999, or any time thereafter when the outstanding balance was still low, plaintiff allowed Wells Fargo to continue to extend credit on the basis of their joint creditworthiness. The card was used for numerous purchases for plaintiff's direct benefit, including $1,000 cash advance into her checking account just prior to the bankruptcy, tuition for her real estate course, her car insurance premiums, her car repairs, furniture, and other charges. Plaintiff is now estopped to deny that she is a joint account holder.

**D.      As a Matter of Law, Plaintiff Is Not Entitled to Recover under FCRA.**

15 U.S.C. § 1681s-2(b) sets forth duties of "furnishers of information" after receiving notice from a CRA that the accuracy of furnished information has been disputed. The primary requirement of this statute, and the one at issue in this case, is that upon notice of a dispute received from a CRA, the furnisher must "conduct an investigation with respect to the disputed information." This has been interpreted to require a reasonable investigation. In order to prevail on a claim for violation of section 1681s-2(b), the plaintiff has the burden of proving that (1) the defendant's investigation was unreasonable and (2) that the result of the investigation was, in fact, inaccurate. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010). We address the second requirement first.

**1.      Plaintiff cannot meet her burden of proof that inaccurate information was reported by Wells Fargo.** "To prevail on a claim against a furnisher, a consumer must prove that the furnisher provided inaccurate information to the CRA." *Allicon v. Verizon Wireless*, 2011 WL 2357600, *3 (D.N.H. Jun. 9, 2011) (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)). "[F]ailure to demonstrate actual inaccuracies in the furnished

PAGE 25 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

information that a reasonable investigation could have discovered is a separate, sufficient basis for summary judgment." *Chiang*, 595 F.3d at 38-39.[5]

a.    **The evidence shows that a joint credit card account was opened in 1999 for plaintiff and her husband.**    Wells Fargo's normal business records show that the Account was opened in 1999 as a joint account with plaintiff and her husband. This is confirmed by Wells Fargo's having obtained and entered into its records on September 30, 1999, all of the required personal information about the plaintiff that it would obtain from an account holder, including her Social Security and driver's license numbers. This information would not have been obtained unless both plaintiff and her husband were applying for a joint account.

The declaration of former Wells Fargo employee Kathleen DeBeaudry confirms she opened the Account for both of them. Electronic data uncovered during the investigation of this case identified Ms. DeBeaudry as the employee who processed the application for the Account in this case. She accepted their joint written credit card application and entered their personal identifying information into Wells Fargo's computer system. It was her strict policy, in conformance with Wells Fargo's policy, to require both joint account applicants to be present and provide identification when applying for a joint account. This is confirmed by plaintiff's husband, who testified that the application must have been opened with a paper application, and that he would not have provided his wife's identifying information.

Plaintiff has admitted that she has no way to prove that she did not apply for the credit card. All she offers are inconsistent, self-serving, and unsupported assertions. But her denials are not sufficient, and they are contradicted by her own admission that one cannot remember now what one applied for in 1999. There is no material issue of fact: as a matter of law, plaintiff

---

[5] While accuracy or inaccuracy of the result of an investigation is not determinative of whether the investigation was reasonable, unless the plaintiff can prove actual inaccuracy, she cannot prove that even an unreasonable investigation *caused* any of her alleged damage.

PAGE 26 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

cannot satisfy her burden of proving that the reported information was incorrect, and therefore summary judgment should be granted in favor of Wells Fargo.

>   **b.**    **Plaintiff accepted the credit card and thereby bound herself under the cardholder agreement.**    The evidence shows that plaintiff's actions constituted acceptance of the Account pursuant to the cardholder agreement.    The agreement that governs the Account, and which was sent to plaintiff along with the credit card in her name, specifies the method of accepting the agreement:

>> (2) ACCEPTANCE OF AGREEMENT.  By either signing or accepting the plastic card(s) issued to you by us (your "Card(s)"), you accept the terms and conditions of this Agreement.

(Green Decl. Ex. 13 at ¶ 2.)

Plaintiff in this case agreed she accepted the card that was issued to her in her name, and therefore has accepted the agreement.  She admits that she received the card in the mail from Wells Fargo.  She then admits that she did not inform Wells Fargo that there was any mistake, but simply kept the card in a filing cabinet.  Then, over the next 11 years, two additional replacement cards were issued to her, and the cards were used for the purchase of goods and services for plaintiff's direct benefit, some of which appear to have been purchased by plaintiff herself or at her direction.  Plaintiff has accepted the terms of the agreement, and therefore plaintiff cannot show that Wells Fargo falsely reported her responsibility for the Account.

>   **2.**    **Plaintiff cannot show that Wells Fargo ever failed to perform a reasonable investigation.**  Upon notice of a dispute from a CRA, a furnisher of information is required to conduct a reasonable investigation based on the information provided in the notice of dispute. *Gorman*, 584 F.3d at 1157.  The Seventh Circuit has explained the threshold for reasonableness at the summary judgment stage:  "A furnisher of information is entitled to summary judgment if it conducts a reasonable investigation based upon the information regarding the dispute provided by the credit reporting agency, concludes that there is no evidence its information is inaccurate,

PAGE 27 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

and accurately reports its findings to the credit reporting agencies." *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005).

While FCRA does not state what a reasonable investigation requires, section 1681s-2(a) states that the furnisher shall not furnish information if the person "knows or has reasonable cause to believe the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). That section goes on to state that "reasonable cause" means "specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added).

Thus, "conclusory assertions that [plaintiff] is not responsible for the debt" are not sufficient to preclude summary judgment for the defendant. *See Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997 (D. Colo. Dec. 12, 2012). In granting summary judgment for the defendant, the court in *Collins* noted that the plaintiff "did not provide any *facts or documentation* to support his claims." (Emphasis added). Similarly, in *Stroud v. Bank of America N.A.*, the court granted summary judgment for the defendant, noting the plaintiff had "failed to provide any *evidence*, as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable or that BOA reported any inaccurate information." 886 F. Supp. 2d 1308, 1314 (S.D. Fla. 2012) (emphasis original). In this case, plaintiff also admits that she has no evidence other than her assertions, and that her CRA disputes provided Wells Fargo with no such evidence.

The scope of the duty to investigate a CRA dispute is strictly limited to the information provided in the notice of dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009); *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997 (D. Colo. Dec. 12, 2012) ("The wording of the notice of dispute, as the furnisher receives it from the credit reporting agency, constrains the investigation: the furnisher need only respond to the specific dispute, as it is received."). In this case, the information provided in the ACDVs to Wells Fargo stated essentially that the customer claimed not to be obligated on the Account. Pursuant to its

PAGE 28 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

procedures, there being no claim of fraud, Wells Fargo verified that the personal information reported for plaintiff on the ACDV was accurate and that the customer was liable for the account according to its records.

Even the most descriptive ACDV provided to Wells Fargo did not provide any basis to doubt the accuracy of its business records, as the ACDV provided nothing more than "solely allegations of the consumer." (Green Decl. Ex. 1 at 2. ("In 1999 Thomas Thomasian opened credit account, I did not activate it, sign it, access it, make purchases in any way. Thomas Thomasian made all payments.").) Nothing in this ACDV, or any of the others, contains anything more than a restatement of plaintiff's unsupported denial of liability. Moreover, according to Wells Fargo's own records, John Bradley with Wells Fargo's executive office had already investigated a similar dispute directly from plaintiff and concluded it was without merit. (Harmon Decl. Ex. 5 at 22-23.) Mr. Bradley, believing that it was an electronic application, reviewed the account history and confirmed that account statements had been sent to plaintiff every month for over a decade, that the records included her required personal information to open a joint account, that plaintiff had contacted Wells Fargo and been verified as a cardholder in 2001, and that there was no prior record of plaintiff disputing the Account or claiming fraud. (Harmon Decl. Ex. 5 at 28-29, 78.) The later ACDV disputes did not provide Wells Fargo any reason to doubt Mr. Bradley's earlier investigation, and it was not required to repeat that investigation. *Gorman*, 584 F.3d at 1160.

In *Malm v. Household Bank (SB), N.A.*, the plaintiff's wife signed the plaintiff's name on a joint credit card application without the plaintiff's consent or knowledge. Civ. 03-4340ADMAJB, 2004 WL 1559370, at *1 (D. Minn. July 7, 2004). After discovering the delinquency, both plaintiff *and* his ex-wife informed the defendant of the issue, but the defendant would not remove him. *Id.* Eventually, plaintiff disputed the information with the CRA, which sent the defendant an ACDV stating "Not his/hers. Provide complete ID." *Id.* at *2. The defendant compared the information on the ACDV with its records and confirmed the

PAGE 29 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

information matched. *Id.* The court granted summary judgment for the defendant, because the ACDV form did not inform the defendant that the plaintiff believed his ex-wife forged his signature. *Id.* at *5. The court held the defendant's investigation was reasonable as a matter of law "given the cursory notice it received concerning [p]laintiff's dispute." *Id.* Similarly, in this case plaintiff claimed that her husband opened the Account, but never claimed (and still does not claim) that her husband fraudulently provided Wells Fargo with her personal information.

In *Westra* the plaintiff was the victim of identity theft. After the plaintiff's dispute, the CRA sent an ACDV notice, but failed to mention fraud or identity theft. 409 F.3d at 826. As here, absent indication of fraud, the defendant there verified the plaintiff's name, date of birth, and address and that its records showed plaintiff was liable for the Account. *Id.* Plaintiff sent a second dispute, and this time the ACDV indicated that there was alleged fraud and identity theft. *Id.* Based on this new information, the defendant deleted the fraudulent account from the plaintiff's credit report. *Id.* The Seventh Circuit affirmed summary judgment for the defendant on plaintiff's claim that the first investigation was unreasonable. The court held that the "investigation in this case was reasonable given the scant information [defendant] received," which merely indicated that that plaintiff "was disputing the charge on the basis that the account did not belong to him." *Id.* at 827.

In both *Malm* and *Westra* the courts agreed that where the ACDV provided the furnisher with no reason to doubt the accuracy of its records, it was reasonable as a matter of law to rely on those records. In this case, plaintiff was invited to initiate a fraud investigation but she chose not to, and even now she claims there was no fraud. Yet, absent fraud, there is no explanation for how Wells Fargo could have ended up with all of her personal information, and plaintiff has provided none. Under those circumstances, it was reasonable for Wells Fargo to conclude that the plaintiff was simply mistaken, despite her denials.

Absent some reason to doubt the accuracy of its records beyond plaintiff's denials, such as a claim of fraud or some supporting evidence, Wells Fargo was justified in relying on those

PAGE 30 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

records.  Its investigation was, therefore, reasonable as a matter of law.  Plaintiff's claims should be dismissed and summary judgment granted to Wells Fargo.

**E.      Plaintiff's Claims Should Be Dismissed on the Grounds of Spoliation.**

Spoliation is the destruction of evidence preventing another's use of such evidence in pending litigation.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  The Court has "'the power to sanction the responsible party' for failing to preserve material evidence." *Woodard v. Ford Motor Co.*, No. 1:11-cv-3092–CL, 2013 WL 3024828, *2 (D. Or. June 13, 2013) (quoting *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002)).  Where the spoliation is "characterized by willfulness, fault, or bad faith," dismissal is an available sanction.  *A & T Siding, Inc. v. Capitol Specialty Ins. Corp.*, No. 3:10-CV-980-AC, 2012 WL 707100, at *4 (D. Or. Mar. 12, 2012) (*citing Leon*, 464 F.3d at 958).  The key factors for the Court to consider in deciding whether dismissal is appropriate are (i) prejudice to the defendant and (ii) the suitability of lesser sanctions.  *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

**1.      Plaintiff knowingly or recklessly destroyed, or allowed her husband to destroy, key evidence.**  A party's destruction of evidence qualifies as willful spoliation if the party "has some notice that the documents were *potentially* relevant" to the litigation before they were destroyed.  *Woodard*, 2013 WL 3024828, *3 (quoting *Leon,* 464 F.3d at 959)*.*  The duty to preserve material evidence "extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Erlandson v. Ford Motor Co.*, No. 08 CV 1137-BR, 2009 WL 3672898, at *5 (D. Or. Oct. 30, 2009) (*quoting Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (2d Cir. 2001)).

Plaintiff knew or should have known of a potential dispute with Wells Fargo when she received the credit card and began receiving account statements in 1999.  But she failed to retain key evidence that could help Wells Fargo defend itself.  Plaintiff has not produced a single copy of a statement regarding the Account or the Joint Checking Account, even those that were issued

PAGE 31 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

*after* plaintiff began complaining to Wells Fargo that she was not responsible for the Account in July 2011.  Plaintiff has also failed to produce the cards issued to her and many of the credit reports she received from Equifax listing the Account.

At a minimum, having disputed her responsibility to pay for the Account charges and being advised Wells Fargo did not agree, plaintiff knew or should have known that there was the potential for litigation.  Yet, plaintiff not only failed to retain documents, but allowed her husband to affirmatively destroy them, as he admits destroying statements for both the checking and credit card accounts and other documents after plaintiff had initiated her disputes and that he had asked plaintiff about destroying documents.  (Harmon Decl. Ex. 1 at 66-67; Ex. 10.)

Plaintiff's conduct, including her inaction, in allowing her husband to destroy these documents constitutes willful spoliation.  *See BTO Logging, Inc. v. Deere & Co.*, 174 F.R.D. 690, 693-94 (D. Or. 1997) (plaintiff sold harvester involved in accident before litigation concluded); *see also Perez-Velasco v. Suzuki Motor Co.*, 266 F. Supp. 2d 266, 268 (D.P.R. 2003) (after plaintiff's expert inspected vehicle involved in accident, plaintiff allowed it to be sold); *Quaglietta v. Nissan Motor Co.*, No. 97-5965, 2000 WL 1306791, at *1 (D.N.J. Aug. 16, 2000) (plaintiff allowed vehicle to be sold for salvage after he initiated suit); *Brancaccio v. Mitsubishi Motors Co.*, No. 90–7852, 1992 WL 189937, at *1–2 (S.D.N.Y. Aug. 31, 1992) (plaintiff allowed vehicle to be repossessed); *Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 26-27, 2003 Pa. Super. 152 (Pa. Super. Ct. 2006) (after filing suit, plaintiff had surgery to remove medical device at issue but did not attempt to retrieve it from the hospital until two years later).

**2.    Plaintiff's willful spoliation of evidence has prejudiced Wells Fargo's ability to defend this litigation.**  The prejudice inquiry "looks to whether the [plaintiff's] actions impaired [defendant's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (*citing U.S. v. Kahaluu Const.,* 857 F.2d 600, 604 (9th Cir. 1988)).  Destruction that precludes a party from inspecting evidence may create prejudice. *Unigard Sec. Ins.Co. v. Lakewood Eng'g & Mfg. Co.*, 982 F.2d 363, 369 (9th Cir. 1992).

PAGE 32 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR
SUMMARY JUDGMENT

Wells Fargo is prejudiced by the destruction of and failure to retain records regarding the Account. The statements could show that plaintiff received and reviewed monthly statements, and made notes on them confirming charges and payments in reconciling her accounts. Defendant has one document with plaintiff's handwritten markings that contradicts one of the allegations in her complaint. (*Compare* Equifax Decl. Ex. 1, Harmon Decl. Ex. 3 at 2 *with* Compl. ¶ 3.) Defendant has also located a payment by plaintiff on the Account for a specific charge that also contradicts her complaint. Documents that have been destroyed, and any markings on them, would also relate to the credibility of plaintiff at trial. Mr. Thomasian agreed that the destroyed records could help with some of the issues in this case. (Harmon Decl. Ex. 1 at 69-70.) For all of these reasons, destruction of these documents and cards is prejudicial to Wells Fargo's ability to fully defend this litigation.

   **3. No Lesser Remedy Would Cure the Prejudice Caused by Plaintiff's Spoliation.** A district court should fashion a remedy which serves "'the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (*quoting West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A consideration of lesser alternatives may include a discussion of the feasibility of less drastic sanctions, an explanation of why lesser alternatives are inappropriate, or a warning that dismissal might be possible should the party not comply. *Leon*, 464 F.3d at 960.

   In this case, because evidence that has been destroyed could potentially prove a total defense to plaintiff's claims, no less drastic remedy than dismissal can remedy the prejudice caused by plaintiff's willful destruction and spoliation of evidence. Therefore, her claims should be dismissed. Alternatively, the Court should order that an appropriate jury instruction be given.

**F. Plaintiff's "Willful Violation" Claim Under 15 U.S.C. § 1681n Should Be Dismissed.**

   Plaintiff has failed to properly allege, and can present no evidence of, a willful violation of FCRA. Plaintiff is required to allege plausible facts sufficient to claim that Wells Fargo acted, at a minimum, with "conscious disregard of the law." *See Thomas v. U.S. Bank N.A.*, CV 05-

PAGE 33 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

1725-MO, 2007 WL 764312 (D. Or. Mar. 8, 2007) (quoting *Reynolds v. Hartford Fin. Servs. Grp., Inc.*, 435 F.3d 1081, 1098 (9th Cir. 2006)).  A plaintiff must plausibly allege and prove that the defendant knew that its policy or action violated the plaintiff's FRCA rights, or that it acted with "reckless disregard."  *Id.*  It does not constitute "reckless disregard" for a company to come to "a tenable, albeit erroneous, interpretation of the statute."  *Reynolds*, 435 F.3d at 1085.

The alleged wrongful conduct in this case is that Wells Fargo did not conduct a reasonable investigation of the CRA disputes it received, but Wells Fargo's investigation went far beyond what was required by the statute.  Wells Fargo's statutory duty to investigate is strictly circumscribed by the notice of dispute.  Yet Wells Fargo also thoroughly investigated plaintiff's direct disputes, reviewing plaintiff's account history, attempting to locate the original application, verifying plaintiff's personal information, and inviting plaintiff to initiate a fraud investigation.  Wells Fargo concluded that plaintiff appeared to be liable for the Account because, *inter alia*, Wells Fargo had plaintiff's personal information it would not otherwise have, statements had been issued in plaintiff's name for many years, the Account had been opened and used for many years without any complaint, and plaintiff did not claim fraud or identity theft.

When plaintiff initiated her CRA disputes, the ACDVs did not provide Wells Fargo with any new or different information that would have caused Wells Fargo to doubt either the accuracy of its own records or the result of the previous investigations.  Still, for every dispute, Wells Fargo faithfully reviewed all of the information provided, made sure that it was correct, and accurately reported the results.  That is all that FCRA requires.  Plaintiff has not pled, and cannot plead, any facts to support her claim that Wells Fargo willfully ignored its responsibilities under FCRA.  Nor does she have any evidence to show that the results of the investigation were inaccurate.  Therefore, her claim must fail.

This case is unlike cases where willfulness claims have gone to the jury.  In *Ferrarelli v. Federated Fin. Corp. of Am.*, 1:07 CV 685, 2009 WL 116972, at *6 (S.D. Ohio Jan. 16, 2009), the claim survived summary judgment where the defendant possessed information showing that

PAGE 34 – MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

the plaintiff was the victim of identity fraud, and did not respond appropriately.   In *Schaffhausen v. Bank of Am., N.A.*, 393 F. Supp. 2d 853 (D. Minn. 2005), the defendant admitted the information was inaccurate, but when contacted by the CRAs, it continued to verify the false information. Finally, in *Campbell v. Experian Info. Solutions, Inc.*, 08-4217-CV-C-NKL, 2009 WL 3834125, at *8-9 (W.D. Mo. Nov. 13, 2009), the defendant was on actual notice of numerous indications of a "mixed file," yet it took no action to determine whether plaintiff's file was mixed.   None of these situations are present here.   Because there is no evidence that anything Wells Fargo reported was inaccurate, much less that any Wells Fargo employee willfully ignored any such evidence, Wells Fargo is entitled to summary judgment on plaintiff's claim under section 1681n.

## IV.  CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that its motion for summary judgment be granted.

DATED:  September 13, 2013

LANE POWELL PC

By /s/Anthony M. Stark
    Robert E. Maloney, Jr., OSB No. 670856
    Pilar C. French, OSB No. 962880
    Anthony M. Stark, OSB No. 122633
    Telephone: 503.778.2100
Attorneys for Defendant Wells Fargo Bank N.A.

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200