**MICHAEL C. BAXTER**  Honorable Dennis J. Hubel
Oregon State Bar ID Number 910203
michael@baxterlaw.com
**JUSTIN M. BAXTER**
Oregon State Bar ID Number 992178
justin@baxterlaw.com
Baxter & Baxter LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172
Attorneys for Plaintiff Thomasian

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CARLOPI THOMASIAN**, <br><br> Plaintiff, <br><br> v. <br><br> **WELLS FARGO BANK N.A.** a foreign legal entity, **TRANS UNION LLC**, a foreign company, **EXPERIAN INFORMATION SOLUTIONS, INC.**, a foreign corporation, **EQUIFAX INFORMATION SERVICES, LLC,** a foreign corporation. <br><br> Defendants. | Case No. 3:12-cv-01435-HU <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT** |

<u>L.R. 7-1(a) CERTIFICATION</u>

Pursuant to L.R. 56-1(b) and L.R. 7-1(a), in regard to plaintiff's evidentiary objections, counsel for plaintiff hereby certifies that the parties made a good faith effort through telephone conference to resolve the dispute and have been unable to do so.

Page  1 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

This is an action for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681 et seq. Defendant Wells Fargo Bank, N.A., reported to the national credit reporting agencies (CRA) that a credit card account that belonged to plaintiff Carlopi Thomasian's husband, belonged to plaintiff, and as a result, the account appeared in plaintiff's credit report. Neither plaintiff nor her husband requested or applied for a joint account. Plaintiff did not accept a card. She did not sign a card. She did not use a card.

Plaintiff corresponded with defendant prior to her CRA disputes. When plaintiff contacted defendant about the account, defendant concocted a story about the account being opened electronically via a password-protected website. Defendant now admits this was false, and concedes that it has lost or destroyed the actual application for this account.

When defendant received notice of plaintiff's dispute from the CRAs, defendant did not conduct a "reasonable investigation" as required by Section 1681s-2(b)(1)(A). Rather, defendant merely compared the identifying information on the account with the data reported by the CRAs – which defendant provided to the CRAs in the first place. *See, e.g., Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004). Furthermore, defendant failed to delete information which to this day "cannot be verified." 15 U.S.C. § 1681s-2(b)(1)(E).

Defendant moves for summary judgment on numerous legal grounds. Many of these grounds are inapposite in FCRA cases. Notwithstanding the legal arguments, numerous questions of fact remain for the jury. For the reasons set forth below, the Court should deny defendant's motion.

\\\ \\\ \\\

\\\ \\\ \\\

Page  2 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**


SUMMARY JUDGMENT STANDARD

In order to avoid summary judgment, the opposing party need not prove that the issue of fact would be resolved in its favor. The party need only show sufficient evidence of a factual dispute to require that a jury resolve the dispute at trial. *TW Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The court does not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* If there is a conflict of evidence, the judge must assume the truth of the evidence set forth by the nonmoving party. *Id.* at 631. "Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.* All inferences must be drawn in the light most favorable to the nonmoving party. *Id.*

STATEMENT OF FACTS

**Response to Section II.A.** First, the Court should strike the declarations of Price, Freeman, DeBeaudry, and Munson, as these witnesses were not disclosed during the course of discovery.[1] Plaintiff served interrogatories which requested that defendant "[i]dentify every person who possesses any information pertaining to any facts, claims, defenses or issues in plaintiff's lawsuit." Defendant responded "Wells Fargo will answer this interrogatory by producing documents in accordance with Rule 33(d) of the FRCP." *Id.* Defendant did not produce any documents identifying these four witnesses and otherwise failed to identify those individuals as witnesses. Baxter Decl., Ex. 1.

Fed. R. Civ. Proc. 37(c)(1) provides: "If a party fails to provide information or identify a

---

[1] The DeBaudry declaration is particularly problematic. She suggests that she recalls following her "regular practice" a specific application that took place some fourteen years ago, over the course of a ten year career, though she acknowledges that the Thomasians were regular customers with other accounts.

Page  3 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 26(e)(1) provides: "A party . . .who has responded to an interrogatory . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."

In response to defendant's statement of facts, plaintiff did not request or apply for the account. She did not accept a card, sign a card, or use a card. If plaintiff believed that she was a joint account holder on the account in any way, shape, or form, she would have just paid the account. Rather, she steadfastly refused to pay, and repeatedly asked Wells Fargo and the CRAs to remove the account from her credit report. C. Thomasian. Decl., ¶ 1.

**Response to Section II.B.** Plaintiff agrees that defendant issued a card with her name on it. However, neither plaintiff nor her husband requested or applied for a joint account. At most, plaintiff's husband would have requested an extra card for his wife, but he would not have requested a joint account or any other account that would have made his wife an obligor. Neither plaintiff nor her husband recall requesting an "authorized user" card using that term, but both agree that neither plaintiff nor her husband would have requested a joint account. C. Thomasian. Decl., ¶ 2; T. Thomasian. Decl., ¶ 1.

Plaintiff agrees that statements were mailed to her husband, which included plaintiff's name on them. Plaintiff does not agree that the inclusion of her name on statements make her a co-obligor. As plaintiff and her husband had not applied for a joint account, they had no reason to dispute the inclusion of plaintiff's name on the statements. C. Thomasian. Decl., ¶ 3.

Page 4 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

**Response to Section II.C.** Plaintiff did not use the account. To the extent that plaintiff received any "benefit" from her husband's use of the account, plaintiff does not agree that makes her a joint account holder, or entitles defendant to report the account to the CRAs as such. Defendant has been unable or unwilling to produce any records bearing plaintiff's signature or demonstrating that she used a card to make any purchases. C. Thomasian. Decl., ¶ 4.

**Response to Section II.D.** In or about August of 2011, plaintiff received a collection call from defendant regarding the account at issue in this case. Plaintiff responded that it was not her account and refused to pay it. Plaintiff sent a letter dated August 13, 2011 to defendant, stating the account was not hers and it belonged to her husband. She advised defendant that she did not request a card, did not activate a card, and did not use a card. C. Thomasian. Decl., ¶ 5, Ex. 1.

Plaintiff sent another letter dated September 15, 2011, to defendant, again disputing the account. She reiterated that she did not apply for, sign or use a credit card. She specifically requested a copy of the signed application and the terms and conditions of the account. C. Thomasian. Decl., ¶ 6, Ex. 2.

Defendant responded in a letter dated September 26, 2011. Defendant stated that the account was opened in 1999, "using an electronic application submitted via the password secured Wells Fargo website." Defendant told plaintiff that "No signatures are required for this type of electronic application, which have been legally valid in the United States for over fifteen years." Defendant stated that plaintiff had made purchases using the account. These statements were false. C. Thomasian. Decl., ¶ 7, Ex. 3.

Plaintiff responded in a letter dated October 26, 2011. She again reiterated that she did not apply for a credit card or activate a card. She asked for proof of the alleged charges. C. Thomasian. Decl., ¶ 8, Ex. 4.

Page 5 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Defendant responded in a letter dated November 2, 2011. Defendant stated "Wells Fargo believes the claims in your letter are not bona fide or raised in good faith." Defendant characterized plaintiff's dispute as "improper." Defendant wrote to plaintiff "We encourage you to discontinue sending letters expressing legally baseless claims." Finally, defendant wrote "Any further correspondence sent will be met with no response and Wells Fargo will continue to show the account as outstanding." C. Thomasian. Decl., ¶ 9, Ex. 5.

Defendant acknowledges that it received notices of plaintiff's disputes, in the form of automated consumer dispute verification (ACDV) forms, from the CRAs as follows: Equifax (2/23/12), Trans Union (2/29/12), Experian (3/6/12), Trans Union (4/3/12), Equifax (4/11/12), Experian (4/19/12), Trans Union (8/27/12), and Experian (9/12/12). Def's Br., p. 12. While plaintiff disagrees with defendant's characterization of the dispute notices from the CRAs, plaintiff agrees that the CRAs transmitted the codes and text to defendant referenced in defendant's brief, and the corresponding exhibits reflect those dispute codes and additional information provided by the CRAs.

Plaintiff agrees that Ms. Reeves testified regarding defendant's procedure for responding to an ACDV. However, as discussed in detail below, the procedures merely constitute comparing the information in defendant's records with the information in the ADCV – which the CRAs originally obtained from defendant. Plaintiff does not agree that this data comparison constituted a reasonable investigation of the disputes in this case. Regarding its procedures for responding to ACDVs, defendant testified:

```
16 Q Is it relevant to the bank whether it possesses a
17 signed application from the consumer when responding to an
18 ACDV?
19 MR. MALONEY: Like Exhibit 3?
20 MR. J. BAXTER: Yes.
21 MR. MALONEY: Object to the form. You can
22 answer.
23 THE WITNESS: No. Because we have the
```

Page 6 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

> 24 information that -- we have the consumer information
> 25 in our system and it's been that information. Reeves Depo.
> Tr., p. 108.
>
> 20 Q So for the purposes of responding to an ACDV, the
> 21 only thing that matters is if the name, Social Security
> 22 number, and date of birth that are in the system of record
> 23 match the name, Social Security number, and date of birth
> 24 that Equifax sends in its ACDV?
> 25 MR. MALONEY: Object to the form unless you
> 1 are incorporating with the type of request that is
> 2 made in Exhibit 3.
> 3 MR. J. BAXTER: Yes.
> 4 MR. MALONEY: Okay.
> 5 THE WITNESS: Yes. Reeves Depo. Tr., p. 109-110.

With regard to the March 6, 2012 Experian ACDV:

> 16 Q And the investigation that was performed in
> 17 response to this ACDV was to match the name, Social
> 18 Security number, and date of birth, correct?
> 19 A Correct.
> 20 Q And based upon those three items matching the
> 21 information in the bank's system of record, the bank
> 22 verified that the account is accurate, correct?
> 23 A That's correct.
> 24 Q Did the dispute operator consider any other
> 25 information in processing this ACDV?
> 1 A No. Everything is per our system of records,
> 2 FDR.
> 3 Q So long as those three items match, the bank is
> 4 going to verify as accurate, correct?
> 5 MR. MALONEY: Object to the form of the
> 6 question. Lack of foundation.
> 7 THE WITNESS: Correct. Reeves Depo. Tr., p. 126-27.

With regard to the April 3, 2012 Trans Union ACDV, referencing the September 26,

2011 letter:

> 19 Q And Trans Union has communicated to Wells Fargo
> 20 that it thinks that this information is relevant. Does
> 21 Wells Fargo think it's relevant?
> 22 MR. MALONEY: Object to the form. Lack of
> 23 foundation. Vague.
> 24 THE WITNESS: The relevant information on this
> 25 particular case is vague. If I am looking at the —
> 1 responding to the dispute, the documentation dated
> 2 9/26, it doesn't really say what documentation is
> 3 that, where it came from, who sent it. It's really
> 4 vague for us to see on that particular information.
> 5 BY MR. J. BAXTER:
> 6 Q In this case, we do have system records that show
> 7 that there was a letter dated 9/26/2011, correct?
> 8 A Yes.
> 9 Q Would you expect the dispute operator to locate

```
10 that letter?
11 MR. MALONEY: Object to the form.
12 THE WITNESS: No.
13 BY MR. J. BAXTER:
14 Q Would you expect the dispute operator to review
15 those records?
16 MR. MALONEY: Which records?
17 MR. J. BAXTER: Of 9/26/2011.
18 THE WITNESS: No. The operator will basically
19 respond to the dispute, look at the FCRA information,
20 and would not have an access to review the
21 documentation -- if there is a documentation dated to
22 what was provided. Reeves Depo. Tr., p. 133-134.
```

With regard to the April 11, 2012 Equifax ACDV:

```
8 Q If I understand correctly, you matched the name,
9 Social Security, and date of birth, correct?
10 A Correct.
11 Q The reference to the John Bradley letter did not
12 affect Wells Fargo's response to the ACDV one way or the
13 other, correct?
14 A Correct.
15 Q Is there any procedure to review the record to
16 look at Wells Fargo documents referred to in an ACDV?
17 A The procedure is to review the notes on the
18 system of record. With this case, they have reviewed the
19 notes which will match the system of record. Reeves Depo. Tr.,
p. 139.
```

With regard to the April 19, 2012 Experian ACDV:

```
13 Q All right. The dispute code was one, correct?
14 A Yes.
15 Q And so the procedure would be to match name,
16 Social Security number, and date of birth, correct?
17 A Yes.
18 Q And there's additional FCRA relevant information,
19 correct?
20 A Yes. Reeves Depo. Tr., p. 142.

11 Q So did the bank employee do anything in response
12 to the information provided in the FCRA Relevant
13 Information field?
14 A No. Reeves Depo. Tr., p. 145.
```

With regard to the August 27, 2012 Trans Union ACDV:

```
16 Q So the procedure that we saw before was to match
17 the name, Social Security number, and date of birth,
18 correct?
19 A Yes.
20 Q And because those matched, the bank instructed
21 Trans Union to continue reporting the account, correct?
22 A Yes. Reeves Depo. Tr., p. 146.
```

Page  8 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

With regard to the September 12, 2012 Experian ACDV:

```
17 Q What was the response from the bank to Experian?
18 A The response here is blank, meaning we leave it
19 blank if the account history is reporting accurately.
20 Q So that means it's a match?
21 A It's a match, yes. And it was notated on the
22 system that they verified payment history.
23 Q So if the account information contained in the
24 system of record matches the account information sent by
25 Experian in the ACDV, then the bank considers that an
1  account to be verified, correct?
2  A Correct. Reeves Depo. Tr., p. 152-53.
```

Plaintiff agrees that ACDVs refer to the September 26, 2011 letter from defendant to plaintiff. However, plaintiff disagrees that reference to this letter absolved defendant of its duties to conduct a reasonable investigation in this case. Moreover, as defendant concedes, the conclusion drawn by the bank employee in September 2011 was false.

Plaintiff agrees that she did not claim to be the victim of fraud or identity theft. She has steadfastly maintained that neither she nor her husband requested or applied for a joint account with her husband. There was no basis or reason for her to file a false fraud claim. Plaintiff could not provide evidence to prove a negative. She repeatedly requested a copy of any document evidencing her signature, which defendant has refused to do. Rather, defendant concocted a story about plaintiff submitting an electronic application via a password protected website, thereby obviating the need for a signature.

**Response to Section II.E.** The complaint speaks for itself, but plaintiff generally agrees with defendant's summary of the pleadings.

**Response to Section II.F.** Plaintiff did not destroy evidence. Rather, defendant destroyed critical pieces of evidence on multiple occasions. Defendant had in its possession the written application, and a microfiche image of the application. Defendant has also not maintained any other images or facsimiles of either of these documents. Plaintiff agrees that her husband has not retained more than a decade of monthly statements relating to an account that he discharged in

his 2011 bankruptcy. Plaintiff agrees that she may have ordered a copy of Equifax her credit report in 2008, but has no recollection of seeing the account. C. Thomasian. Decl., ¶ 10.

<div align="center">ARGUMENT</div>

I. THE FAIR CREDIT REPORTING ACT

The FCRA was the product of Congressional concern over abuses in the credit reporting industry. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), citing 15 U.S.C. § 1681(a). The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner. *Guimond*, 45 F.3d at 1333. "These consumer oriented objectives support a liberal construction of the FCRA." *Id.*

The FCRA was originally enacted to regulate CRAs. However, recognizing that the furnishers of credit information were a critical link in the "elaborate mechanism . . . developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers," the FCRA was amended in 1996 to create duties and liability for furnishers. Pub. L. 104–208. Section 1681s-2 has been repeatedly amended to strengthen protections for consumers. See, e.g., Pub. L. 108–159, Pub. L. 111–203.

II. PLAINTIFF'S CLAIMS FOR RELIEF.

Plaintiff alleges two claims for relief under the FCRA for failing to comply with 15 U.S.C. § 1681s-2(b). Negligent noncompliance subjects the furnisher to liability for actual damages and attorneys fees. 15 U.S.C. § 1681o. Willful noncompliance subjects the furnisher to liability for actual damages, statutory damages, punitive damages, and attorneys fees. 15 U.S.C. § 1681n.

Of significant import, 15 U.S.C. § 1681s-2(a) contains a general requirement that furnishers report accurate information to the CRAs. However, the statute makes clear there is no civil liability for violation of Section 1681s-2(a). 15 U.S.C. § 1681s-2(c).

The Ninth Circuit and other courts have concluded that by implication, a consumer may bring a claim for violation of Section 1681s-2(b). *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Here, plaintiff claims that defendant 1) failed to conduct a reasonable investigation of her dispute, and 2) failed to delete information that was "inaccurate or incomplete or cannot be verified." Section 1681s-2(b) provides:

> (1) In general. After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> \* \* \*
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

The investigation required by Section 1681s-2(b)(1)(A) must be a "reasonable investigation." *Gorman*, 584 F.3d at 1157.

III. STATUTE OF LIMITATIONS, STATUTE OF ULTIMATE REPOSE, LACHES.

   A. <u>Statute Of Limitations.</u>

Defendant contends that plaintiff's claims are time barred because the account may have been included in her credit reports in 2008. That is not correct. The statute of limitations is "the earlier of— (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis

for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

Here, there could be no violation of the FCRA until plaintiff disputed the account to the CRAs, and defendant failed to perform its duties under Section 1681s-2(b). Plaintiff's first dispute occurred in 2012, and she filed her case within two years of that dispute. Plaintiff could not have brought an action for the mere reporting of the account. If she had, she would no doubt be facing a motion to dismiss that claim, citing Section 1681s-2(c). *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

The Ninth Circuit case *Drew v. Equifax Info. Serv., LLC*, 690 F.3d 1100 (9th Cir. 2012), holding that the two-year limitation does not run until the plaintiff discovers the defendant's failure to comply with the statute, not the time that the plaintiff learns of the false information. Here, plaintiff could not have discovered any violation until the violation occurred.

In an unpublished opinion, the Ninth Circuit applied *Nelson* to find that the plaintiff's claim was timely. *Deaton v. Chevy Chase Bank*, 157 Fed. Appx. 23, 24 (9th Cir. 2005). In that case, the court found that the case was filed within two years of the plaintiff's dispute to the CRA, and therefore, the claim against the furnisher was timely.

Defendant attempts to apply the five-year limitation to non-actionable conduct. Section 1681p provides that the statute of limitation runs from "the *violation that is the basis for such liability* occurs." The violation is defendant's faulty investigation – not the false reporting.

Defendant relies upon three pro se cases from other districts. In *Giles v. Capital One Bank*, 2012 U.S. Dist. LEXIS 117735 (M.D. Ga. Aug. 21, 2012), and *Pavey v. Recontrust Co., N.A.*, 2012 U.S. Dist. LEXIS 17688 (E.D. Cal. Feb. 10, 2012), the plaintiffs attempted to bring claims only under Section 1681s-2(a). To the extent inaccurate reporting was the basis for the

Page 12 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

plaintiffs' claims for relief, the claims to be time-barred. In *Andresakis v. Capital One Bank (USA) N.A.*, 2011 U.S. Dist. LEXIS 29242 (S.D.N.Y. Feb. 3, 2011), *aff'd*, 2011 U.S. Dist. LEXIS 29886 (S.D.N.Y. Mar. 23, 2011), the plaintiff disputed to Trans Union some six years prior to filing his complaint, thus the actionable conduct was outside the statute of limitations.

B. Statute Of Ultimate Repose.

Defendant cites the Oregon state statute of ultimate repose for negligent injury to person or property, ORS 12.115. Plaintiff's claims for relief are not for negligence. Indeed, the FCRA claim makes clear that a plaintiff may not bring a claim for common law negligence against a furnisher for reporting credit information. 15 U.S.C. § 1681t(b)(1)(F). Rather, plaintiff's claims for relief are violations of the FCRA. Plaintiff seeks certain remedies under Section 1681n because defendant's mental state was "willful." Plaintiff seeks different remedies under Section 1681o because defendant's mental state was "negligent."

Even assuming ORS 12.115 applied here, the limitation begins "from the date of the act or omission complained of." Defendant conflates inaccurate reporting, which is not actionable, with inadequate investigation, which is actionable. As noted above, plaintiff could not have brought a claim under the FCRA – negligent or otherwise – until her dispute was conveyed by a CRA to defendant. Thus, the complained of action is the failure to delete the account when plaintiff disputed it to the CRAs.

C. Laches.

Defendant argues that plaintiff's claims are barred by the equitable doctrine of laches. First, common law and equitable affirmative defenses are not applicable to FCRA claims. See, e.g., *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 882 (5th Cir. 1989) (unclean hands); *Cole v. Am. Family Mut. Ins. Co.*, 410 F. Supp. 2d 1020, 1025 (D. Kan. 2006) (same); *Kiblen v.*

Page  13 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

*Pickle*, 653 P.2d 1338, 1343 (Wash. Ct. App. 1982) (misrepresentation); *McMillan v. Equifax Credit Info. Serv.*, 153 F.Supp.2d 129 (D. Conn. 2000) (indemnification); *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754-55 (N.D. Ill. 1997) (contribution).

Even if the Court considers this argument, there is not sufficient evidence that plaintiff's claims should be barred as a matter of law. The first indication that plaintiff had that defendant considered her liable for the account was in 2011, after her husband filed for bankruptcy. As soon as plaintiff had notice, she promptly began disputing to defendant and the CRAs.

Defendant argues that plaintiff's claims are untimely because her husband gave her a card in 1999. But, plaintiff and her husband both testified that the account was not joint, i.e., plaintiff was an authorized user. Plaintiff would have had no reason to contact the bank in 1999.

Defendant also argues that the account *may have* appeared in plaintiff's Equifax credit report in 2008. But defendant does not demonstrate that plaintiff was aware of the account, or that it was harmed by any delay at that time. Indeed, defendant admits that it had already destroyed its records by 2004.

IV. ESTOPPEL.

As noted above, courts have generally rejected equitable defenses to FCRA claims. Plaintiff has steadfastly maintained that she did not apply for the account, and did not consent to being made a joint account holder. She had no reason to take any action until she learned that defendant considered her liable for the account in 2011.

V. LIABILITY UNDER THE FCRA.

A. <u>Inaccuracy.</u>

Defendant claims it is entitled to summary judgment because its reporting was accurate. However, defendant concedes that it has twice destroyed the records that would show whether

this was an individual account (as plaintiff contends) or a joint account (as defendant contends). Thus, the defendant's reporting is both *inaccurate* and *cannot be verified*. 15 U.S.C. § 1681s-2(b)(1)(A) and (E).

"No credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. Rejection may be evidence by either return of a card or non-use. *See, Citibank S.D. N.A. v. Santoro*, 210 Or. App. 344, 349, 150 P.3d 429 (2006). Neither plaintiff nor her husband applied for or requested a joint account. Plaintiff never activated a card, signed a card, or used a card. Plaintiff took no actions that would have consummated the cardholder agreement. Plaintiff's conduct throughout 2011 and 2012 is consistent with her claim she did not consent to being made a joint account holder. If she believed she was responsible for the bill, she would have paid it. Instead, she refused demands for payment, and fought to clear her credit.

B. <u>Reasonable Investigation/Failure to Delete Unverifiable Information.</u>

Defendant failed to comply with two requirements under Section 1681s-2(b). First, defendant failed to conduct a reasonable investigation when it received notice of plaintiff's disputes from the CRAs. 15 U.S.C. 1681s-2(b)(1)(A). Second, defendant failed to delete information which was inaccurate or cannot be verified. 15 U.S.C. 1681s-2(b)(1)(E).

Defendant's corporate representative conceded that the extent of the bank's investigation was to compare the identifying information provided by the credit bureaus to the bank's own identifying information (which the bank had provided to the credit bureaus in the first place). That cursory data matching has been rejected by the Fourth Circuit. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d at 431:

> "MBNA was notified of the specific nature of Johnson's dispute - namely, her assertion that she was not a co-obligor on the account. Yet MBNA's agents testified that their investigation was primarily limited to (1) confirming that the name and address listed on the ACDVs were the same as the name and address

Page 15 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

contained in the CIS, and (2) noting that the CIS contained a code indicating that Johnson was the sole responsible party on the account. The MBNA agents also testified that, in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications. Based on this evidence, a jury could reasonably conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS." *Id.*

The Ninth Circuit has adopted the "reasonable investigation" standard, and further noted "summary judgment is generally an inappropriate way to decide questions of reasonableness." *Gorman*, 584 F.3d at 1155. In *Gorman*, the court affirmed summary judgment, because the notifications from the CRAs to the defendant did not identify "the nature of Gorman's dispute." *Id.* at 1158. By contrast, the automated consumer dispute verification (ACDV) forms in this case did convey plaintiff's disputes, conveyed increasingly specific information about plaintiff's disputes throughout 2012, and were consistent with her 2011 communications with defendant.

In this case, as in *Johnson*, defendant merely matched the information that it had on file with the information in the ACDVs. This information naturally matched the identifying information in the ACDVs, because defendant had provided that information to the CRAs in the first place. The first three ACDVs were comprised of codes which correctly identified plaintiff's dispute. The fourth ACDV (Trans Union 4/3/12) was also a code, but provided more specificity, i.e., that plaintiff claimed she was "not liable for account." The fifth ACDV (Equifax 4/11/12) references a September 26, 2011 letter by a bank employee suggesting the account was opened by "electronic application" which defendant concedes was false. The sixth ACDV (Experian 4/19/12) again references the September 26, 2011 letter, and "electr applications." The seventh ACDV (Trans Union 8/27/12) adds additional information, indicating that plaintiff did not activate, sign, access or make purchases using the account. The eighth ACDV (Experian 9/12/12) added more information (though it incorrectly identified Mr. Thomasian as plaintiff's "ex-

Page 16 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

husband") that plaintiff did not use the card, and that Mr. Thomasian had filed for bankruptcy in 2011. All of these disputes called upon defendant to conduct more of an investigation than simply matching the identifying information.

In addition to failing to perform a reasonable investigation, defendant also failed to delete information which cannot be verified. Defendant admits that it cannot produce an original application, a microfiche image of the application, or any facsimile thereof. Presumably, defendant has offered the multiple declarations of various bank employees, "substantially similar" application forms, and interpretations of spreadsheets which are recreations of internal computerized data, for the purposes of convincing the Court that this was a joint account. But in 2012, none of this recreated and interpretive information was available to defendant's employees reviewing the ACDVs.

Ms. Price acknowledges she prepared the spreadsheet after this case was filed. Price Decl., ¶ 3. Ms. Freeman was not employed by defendant at the time of plaintiff's disputes, and the electronic records referenced in her declaration were not part of defendant's investigation. Similarly, Ms. DeBeaudry was not employed by the bank in 2012, and the records she relies upon in her declaration were not available to the bank until after this litigation commenced.

To this day, information defendant is reporting "cannot be verified," and all of the information that defendant puts forth now, in an effort to verify its reporting, was not available to defendant in 2012. At the time of defendant's investigations, it still falsely believed the account was opened by an electronic application, and that no signature was required. Defendant cannot verify the information today, and certainly could not verify it in 2012.

VI. SPOLIATION.

As noted above, it is defendant that has lost the critical pieces of evidence in this case –

Page  17 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

the original application, the microfiche image, and any images derived therefrom. Defendant complains that plaintiff's husband disposed of decade old bank statements. Yet, defendant failed to appreciate the obvious irony that *defendant is a bank*. Rather than militating against plaintiff's claims, the fact that defendant lost the application, and then later concocted a story about an electronic application via a password-protected website, weighs in plaintiff's favor. The statute explicitly extends liability for failing to delete information which "cannot be verified." But more than that, the jury is entitled to hold defendant's spoliation of records against it.

VII. WILLFUL CLAIM.

Under Section 1681n, a consumer may seek punitive damages for a willful violation of the FCRA. The U.S. Supreme Court has held that "The [Ninth Circuit] Court of Appeals correctly held that reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045 (2007). An action is considered reckless if it carries "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. at 68. Therefore, a defendant may be liable for a reckless violation of the FCRA if its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

"[I]n the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine." *Cairns v. GMAC Mortg. Corp.*, 2007 U.S. Dist. LEXIS 16689 (D. Ariz. Mar. 5, 2007); *accord*, *Hammer v JP's Southwestern Foods, L.L.C.*, 739 F Supp 2d 1155, 1167 (W.D. Mo. 2010) (citing cases); *Rodgers v. McCullough*, 296 F. Supp. 2d 895, 902 (W.D. Tenn. 2003) (same).

Page  18 – **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

On remand from the Fourth Circuit, the district court in *Johnson, supra*, applied the reckless standard to facts similar to this case. *Johnson v. MBNA Am. Bank, N.A.*, 2006 U.S. Dist. LEXIS 10533, *15 (M.D. N.C. Mar. 9, 2006). The court noted:

> MBNA has not produced any records to support its assertion that Plaintiff is a joint obligor on the account, such as the original application, Plaintiff's signature for purchases made with the card, her involvement with or use of the cash withdrawn on the account, or payments on the account made by Plaintiff. *Id.*

On that record, the court held: "It is for a jury to decide what investigation MBNA performed and if its actions were in willful disregard of Plaintiff's rights under the FCRA when it confirmed the account was Plaintiff's obligation and continued to attempt to collect and report it to various credit reporting agencies. Reasonable jurors could disagree on these facts, and it is not for the court to weigh the credibility of witnesses or to characterize MBNA's actions as reasonable, negligent, or willful." *Id.* at 16.

In this case, defendant did little more than compare the identifying information it had in its system to that in the ACDVs. As in *Johnson*, this mechanical comparison did not constitute a meaningful investigation of plaintiff's dispute. The comparison of information failed to reveal that defendant had no signed application from plaintiff. Indeed, defendant's records falsely suggested that the account was opened with an electronic application.

Defendant's corporate representative conceded that the ACDV responses were comprised of comparing information in the bank's records with information in the ACDV. Nonetheless, defendant implies that no investigation was necessary because defendant had investigated in response to plaintiff's 2011 direct disputes. Def's Br., p. 12 ("Two of the disputes refer to the Bradley letter, meaning an investigation of plaintiff's dispute had already been done").

To the extent that defendant relies upon this argument, the jury may conclude the 2011 investigation was itself not reasonable. Plaintiff repeatedly requested any documents showing her

signature. In the absence of any such records, defendant falsely told plaintiff that she had opened the account by submitting an electronic application via a password protected website.

When plaintiff tried to reassert her rights and again request documents bearing her signature, defendant doubled down and accused plaintiff of making "improper" and "legally baseless" disputes "not in good faith." Plaintiff was told that future disputes would be "met with no response." The jury is entitled to conclude that the bank's fabrication of the "electronic application" story, and defendant's subsequent reliance on that story, constitutes a reckless disregard for plaintiff's rights.

## CONCLUSION

For the reasons set forth above, genuine issues of fact remain for the jury, and the Court should deny defendant's motion for summary judgment.

DATED this 23rd day of October, 2013.

                        Respectfully submitted,

                        /s/ Justin M. Baxter
                        _____
                        Michael C. Baxter, OSB # 910203
                        michael@baxterlaw.com
                        Justin M. Baxter, OSB # 992178
                        justin@baxterlaw.com
                        Telephone (503) 297-9031
                        Facsimile (503) 291-9172
                        Attorneys for Plaintiff