**MICHAEL C. BAXTER**  
Oregon State Bar ID Number 910203  
michael@baxterlaw.com  
**JUSTIN M. BAXTER**  
Oregon State Bar ID Number 992178  
justin@baxterlaw.com  
Baxter & Baxter LLP  
8835 S.W. Canyon Lane, Suite 130  
Portland, Oregon 97225  
Telephone (503) 297-9031  
Facsimile (503) 291-9172  
Attorneys for Plaintiff Thomasian

Honorable Michael Simon

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CARLOPI THOMASIAN**,

        Plaintiff,

   v.

**WELLS FARGO BANK N.A.**  
a foreign legal entity, **TRANS UNION LLC**,  
a foreign company, **EXPERIAN  
INFORMATION SOLUTIONS, INC.**, a  
foreign corporation, **EQUIFAX  
INFORMATION SERVICES, LLC,** a foreign  
corporation.

        Defendants.

Case No. 3:12-cv-01435-HU

**PLAINTIFF'S TRIAL MEMORANDUM**

Page  1 – **PLAINTIFF'S TRIAL MEMORANDUM**

INTRODUCTION

This is an action for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681 et seq. Defendant Wells Fargo Bank, N.A., reported to the national credit reporting agencies (CRA) that a credit card account that belonged to plaintiff Carlo Thomasian's husband, belonged to Ms. Thomasian, and as a result, the account appeared in her credit report. Neither Ms. Thomasian nor her husband requested or applied for a joint account. Ms. Thomasian did not accept a card. She did not sign a card. She did not use a card.

In 2011, Wells Fargo contacted Ms. Thomasian about the account, attempting to collect it from her. Ms. Thomasian sent a letter to Wells Fargo disputing that she was an account holder, and requesting copies of any documents with her signature. In response, Wells Fargo concocted a story about the account being opened electronically via a password-protected website and therefore no signature was required. Wells Fargo now admits this story was entirely fictional, and Wells Fargo concedes that it has lost or destroyed the actual application for this account, the microfiche of the original application, and defendant does not possess any digital images of the application.

Ms. Thomasian learned that the Wells Fargo account was reporting as delinquent on her credit report. In 2012, she repeatedly contacted each of the CRAs, which in turn conveyed Ms. Thomasian's disputes to Wells Fargo. First, when Wells Fargo received notice of Ms. Thomasian's dispute from the CRAs, defendant did not conduct a "reasonable investigation" as required by Section 1681s-2(b)(1)(A). Rather, Wells Fargo merely compared the identifying information on the account with the data reported by the CRAs – which Wells Fargo provided to the CRAs in the first place. Second, Wells Fargo failed to delete information which to this day "cannot be verified." 15 U.S.C. § 1681s-2(b)(1)(E).

Page  2 – **PLAINTIFF'S TRIAL MEMORANDUM**

SUMMARY OF FACTS

In August of 2011, Ms. Thomasian received a collection call from Wells Fargo regarding the account at issue in this case. Ms. Thomasian responded that it was not her account and refused to pay it. Ms. Thomasian sent a letter dated August 13, 2011 to Wells Fargo, stating the account was not hers and it belonged to her husband. She advised Wells Fargo that she did not request a card, did not activate a card, and did not use a card.

Ms. Thomasian sent another letter dated September 15, 2011, to Wells Fargo, again disputing the account. She reiterated that she did not apply for, sign or use a credit card. She specifically requested a copy of the signed application and the terms and conditions of the account.

Wells Fargo responded in a letter dated September 26, 2011. Wells Fargo stated that the account was opened in 1999, "using an electronic application submitted via the password secured Wells Fargo website." Wells Fargo told Ms. Thomasian that "No signatures are required for this type of electronic application, which have been legally valid in the United States for over fifteen years." Wells Fargo stated that Ms. Thomasian had made purchases using the account. These statements were categorically false.

Ms. Thomasian responded in a letter dated October 26, 2011. She again reiterated that she did not apply for a credit card or activate a card. She asked for proof of the alleged charges.

Wells Fargo responded in a letter dated November 2, 2011. Wells Fargo stated "Wells Fargo believes the claims in your letter are not bona fide or raised in good faith." Wells Fargo characterized Ms. Thomasian's dispute as "improper." Wells Fargo wrote to Ms. Thomasian "We encourage you to discontinue sending letters expressing legally baseless claims." Finally, Wells Fargo wrote "Any further correspondence sent will be met with no response and Wells

Page  3 – **PLAINTIFF'S TRIAL MEMORANDUM**

Fargo will continue to show the account as outstanding."

Wells Fargo acknowledges that it received notices of Ms. Thomasian's disputes in the form of automated consumer dispute verification (ACDV) forms, from the CRAs as follows: Equifax (2/23/12), Trans Union (2/29/12), Experian (3/6/12), Trans Union (4/3/12), Equifax (4/11/12), Experian (4/19/12), Trans Union (8/27/12), and Experian (9/12/12). Def's Br., p. 12. The first three ACDVs were comprised of codes which correctly identified plaintiff's dispute. The fourth ACDV (Trans Union 4/3/12) was also a code, but provided more specificity, i.e., that plaintiff claimed she was "not liable for account." The fifth ACDV (Equifax 4/11/12) references a September 26, 2011 letter by a bank employee suggesting the account was opened by "electronic application" which defendant concedes was false. The sixth ACDV (Experian 4/19/12) again references the September 26, 2011 letter, and "electr applications." The seventh ACDV (Trans Union 8/27/12) adds additional information, indicating that plaintiff did not activate, sign, access or make purchases using the account. The eighth ACDV (Experian 9/12/12) added more information (though it incorrectly identified Mr. Thomasian as plaintiff's "ex-husband") that plaintiff did not use the card, and that Mr. Thomasian had filed for bankruptcy in 2011. Ms. Thomasian also copied Wells Fargo on her disputes to the CRAs in February of 2012.

Wells Fargo acknowledges that it instructed the CRAs to continue reporting the account as it was being reported, and did not instruct any of the CRAs to delete the account from Ms. Thomasian's credit reports.

## APPLICABLE LAW

I. THE FAIR CREDIT REPORTING ACT

The FCRA was the product of Congressional concern over abuses in the credit reporting industry. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995),

Page 4 – **PLAINTIFF'S TRIAL MEMORANDUM**

citing 15 U.S.C. § 1681(a). The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner. *Guimond*, 45 F.3d at 1333. "These consumer oriented objectives support a liberal construction of the FCRA." *Id.*

The FCRA was originally enacted to regulate CRAs. However, recognizing that the furnishers of credit information were a critical link in the "elaborate mechanism . . . developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers," the FCRA was amended in 1996 to create duties and liability for furnishers. Pub. L. 104–208. Section 1681s-2 has been repeatedly amended to strengthen protections for consumers. See, e.g., Pub. L. 108–159, Pub. L. 111–203.

II. PLAINTIFF'S CLAIMS FOR RELIEF.

    A. <u>Applicable Statutory Sections.</u>

Wells Fargo violated two provisions of the FCRA: 1) failing to conduct a reasonable investigation of her dispute in violation of Section 1681s-2(b)(1)(A), and 2) failing to delete information that was "inaccurate or incomplete or cannot be verified" in violation of Section 1681s-2(b)(1)(E)(ii). Section 1681s-2(b) provides in pertinent part:

> (1) In general. After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
>                     \* \* \*
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

Page  5 – **PLAINTIFF'S TRIAL MEMORANDUM**

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

B. <u>Reasonable Investigation/Failure to Delete Unverifiable Information.</u>

Wells Fargo's corporate representative conceded in deposition that the extent of the bank's investigation was to compare the identifying information provided by the credit bureaus to the bank's own identifying information (which the bank had provided to the credit bureaus in the first place). That cursory data matching has been rejected by the Fourth Circuit. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

> "MBNA was notified of the specific nature of Johnson's dispute - namely, her assertion that she was not a co-obligor on the account. Yet MBNA's agents testified that their investigation was primarily limited to (1) confirming that the name and address listed on the ACDVs were the same as the name and address contained in the CIS, and (2) noting that the CIS contained a code indicating that Johnson was the sole responsible party on the account. The MBNA agents also testified that, in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications. Based on this evidence, a jury could reasonably conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS." *Id.*

The Ninth Circuit has adopted the "reasonable investigation" standard. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).

In this case, as in *Johnson*, defendant admitted in deposition that it merely matched the information that it had on file with the information in the ACDVs. This information naturally matched the identifying information in the ACDVs, because defendant had provided that information to the CRAs in the first place.

C. <u>Failing to Delete Information which "Cannot be Verified."</u>

In addition to failing to perform a reasonable investigation, Wells Fargo also failed to delete information that "cannot be verified." See, 15 U.S.C. § 1681s-2(b)(1)(E)(ii). Wells Fargo

Page  6 – **PLAINTIFF'S TRIAL MEMORANDUM**

admits that it cannot produce an original application, a microfiche image of the application, or any facsimile thereof.

"No credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. Rejection may be evidenced by either return of a card or non-use. *See, Citibank S.D. N.A. v. Santoro*, 210 Or. App. 344, 349, 150 P.3d 429 (2006). The FCRA uses the phrase "inaccurate or incomplete or cannot be verified." Each of these terms must mean something, and "cannot be verified" must mean something different from "inaccurate." As applicable in this case, all of the "proof" that Ms. Thomasian requested or applied for an account with her husband has gone missing while in Wells Fargo's possession. To this day, it cannot be verified.

D. Actual Damages under the FCRA.

"Actual damages" as that term is used in the FCRA includes noneconomic damages. *Levine v. World Financial Network Nat. Bank*, 437 F.3d 1118 (11th Cir. 2006); *Philbin v. Trans Union Corp.,* 101 F.3d 957 (3d Cir. 1996); *Boris v. Choicepoint Services, Inc.*, 249 F.Supp.2d 851, 859 (W.D.Ky.2003) (citations omitted) ("It is well settled that actual damages under the FCRA are not limited to pecuniary out of pocket losses but may include non-pecuniary damages for humiliation, mental distress, and injury to one's reputation and creditworthiness").

A consumer is not required to show "but for causation," but rather that the violations were a "substantial factor" in causing the damages. *Philbin,* 101 F.3d at 968.

Moreover, plaintiff may recover noneconomic damages even in the absence of a credit denial. *Guimond*, 45 F.3d at 1333 ("no case has held that denial of credit is a prerequisite to recovery under the FCRA"). A plaintiff's own testimony that he was embarrassed and humiliated by defendant's conduct is sufficient to support an award of compensatory damages. *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983).

Page  7 – **PLAINTIFF'S TRIAL MEMORANDUM**

VII. WILLFUL VIOLATION.

Negligent noncompliance subjects the furnisher to liability for actual damages and attorneys fees. 15 U.S.C. § 1681o. Willful noncompliance subjects the furnisher to liability for actual damages, statutory damages, punitive damages, and attorneys fees. 15 U.S.C. § 1681n.

The U.S. Supreme Court has held that "The [Ninth Circuit] Court of Appeals correctly held that reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045 (2007). An action is considered reckless if it carries "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. at 68. Therefore, a defendant may be liable for a reckless violation of the FCRA if its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

In *Johnson v. MBNA Am. Bank, N.A.*, 2006 U.S. Dist. LEXIS 10533, *15 (M.D. N.C. Mar. 9, 2006), the district court noted facts similar to this case:

> MBNA has not produced any records to support its assertion that Plaintiff is a joint obligor on the account, such as the original application, Plaintiff's signature for purchases made with the card, her involvement with or use of the cash withdrawn on the account, or payments on the account made by Plaintiff. *Id.*

On that record, the court held: "It is for a jury to decide what investigation MBNA performed and if its actions were in willful disregard of Plaintiff's rights under the FCRA when it confirmed the account was Plaintiff's obligation and continued to attempt to collect and report it to various credit reporting agencies. Reasonable jurors could disagree on these facts, and it is not for the court to weigh the credibility of witnesses or to characterize MBNA's actions as reasonable, negligent, or willful." *Id.* at 16.

III. AFFIRMATIVE DEFENSES.

Judge Hubel and this Court denied defendant's motions for summary judgment, including on numerous affirmative defenses such as statute of limitations, statute of ultimate repose, laches and estoppel. Based upon earlier filings by defendant, it appears that Wells Fargo intends to assert some but not all of those affirmative defenses.

IV. COUNTERCLAIMS.

    A. Breach of Contract.

A contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts §1 (1981). *Accord*, *Shaw Wholesale Co. v. Hackbarth*, 102 Or 80, 94, 201 P 1066 (1921) ("It may be stated as a general rule requiring no citation of authority for its support that an offer containing a promise for a consideration to do an act, which a person has a lawful right to do, made by one person to another followed by an unqualified and unequivocal acceptance by the person to whom it is made of the offer as made creates a contract between the person making the offer and the person accepting it.").

"Mutual assent is an essential element in the formation of a contract. It is often referred to as a "meeting of the minds," and describes the process by which parties express their intention to contract in a manner that binds them to perform the terms of the contract. Klimek v. Perisich, 231 Or 71, 79, 371 P2d 956 (1962); Vanderselt v. Pope, 155 Or App 334, 339, 963 P2d 130 (1998). In short, the parties must manifest agreement on all essential terms in order to form a legally binding contract. Beall v. Foster, 95 Or 39, 43–44, 186 P 554 (1920). This agreement or mutual intent is normally demonstrated by the offer and its acceptance. Taggart v. Douglas County, 31 Or App 1137, 1140, 572 P2d 1050 (1977)." Contract Law in Oregon, §6.15 (Oregon

State Bar 2003).

      B. <u>Unjust Enrichment.</u>

"The elements of a quasi-contract are:

(1)    A benefit is "conferred";

(2)    The recipient is aware that a benefit has been received; and

(3)    "[I]t would be unjust to allow retention of the benefit without requiring the recipient to pay for it." Robinowitz v. Pozzi, 127 Or App 464, 467, 872 P2d 993 (1994)." Contract Law in Oregon, §21.17 (Oregon State Bar 2003).

"There can no be quasi-contract if the parties have a contract, either express or implied in fact, covering the same issues. In Gillman v. Emel, 89 Or App 153, 156, 747 P2d 390 (1987), the court of appeals concluded that the jury's finding that the parties entered an express contract regarding the payment of sales commissions precluded a judgment based on quasi-contract." Contract Law in Oregon, §21.21 (Oregon State Bar 2003).

DATED this 30th day of January, 2015.

                              Respectfully submitted,

                              /s/ Justin M. Baxter
                              _____
                              Michael C. Baxter, OSB # 910203
                              michael@baxterlaw.com
                              Justin M. Baxter, OSB # 992178
                              justin@baxterlaw.com
                              Telephone (503) 297-9031
                              Facsimile (503) 291-9172
                              Attorneys for Plaintiff